**In the Interest of an UNNAMED CHILD.**

No. 18175.

Court of Civil Appeals of Texas, Fort Worth.

May 24, 1979.

Rehearing Denied June 14, 1979.

May & Herridge, and Kenneth A. Herridge, Dallas, for appellant.

Wynn, Brown, Mack, Renfro & Thompson, and William M. Schur, Fort Worth, for appellee.

## OPINION

SPURLOCK, Justice.

The paternal grandparents of an unnamed child appeal from a summary judgment denying all relief requested in their

petition for adoption. The sole question presented is whether the grandparents have standing to petition for adoption of the child. We conclude they have standing. The transcript does not reflect whether the child was or was not represented in the trial court by a guardian ad litem.

We reverse and remand.

On July 24, 1978 an unnamed child was born in Tarrant County, Texas. The parties in this case have admitted that the biological father of the child was Chris Wilson. Wilson was never married to the child's mother and he did not legitimate the child. Wilson died on June 1, 1978. On July 28, 1978 the parental rights of the mother were terminated by a decree of the 324th district court. The Edna Gladney Home was appointed managing conservator of the child. The child has been and continues to be under the direction of the home.

It appears that Chris Wilson was the only child of appellants, James Wilson and wife, Evelyn. He was 18 years of age when he died. The Wilsons, grandparents, filed a petition for adoption of the child. They admit that a factor in their desire to adopt the child is that their blood line will end if they cannot adopt the child. The home has refused to consent to the adoption. Wilsons have alleged that the home has withheld its consent without good cause and that it is in the best interest of the child to be adopted by them. Their petition requests the court to waive the requirements that the child reside with them for six months and that the managing conservator consent to the adoption.

The home moved for summary judgment. It claimed the Wilsons are legal strangers to the child. The Wilsons admit they have no legal relationship with the child. Further, the home claims the Wilsons have never expressed any interest in adopting any child prior to this action, nor have they ever even seen the child in question. The home concludes the Wilsons lack standing to petition for adoption of this child.

The Wilsons filed affidavits in opposition to the motion for summary judgment. They filed one detailed affidavit signed by Julie Ann Strickland in which she stated that Chris A. Wilson was the father of the baby. Stated in summary form, she testified by affidavit that both grandparents agreed that whatever she decided to do with baby they would assist her. She and Chris discussed putting the child up for adoption with the Edna Gladney Home. Prior to June 1, 1978 Chris pleaded with her to marry him and have them keep the baby. She at first refused and then decided that she would marry him and keep the baby. Chris died shortly thereafter. She then stated that she visited personally and by telephone with Evelyn and James Wilson and they finally decided that Mr. and Mrs. Wilson should adopt the child. She then at length testified that while in an emotional state she had signed some papers but did not know what they were. She then testified that she revoked any consent she may have made and she either wants her baby back or requests the court to permit Mr. and Mrs. Wilson to adopt the baby.

The trial court sustained the home's motion for summary judgment. It rendered a judgment denying the adoption and all other relief requested by the Wilsons.

The home admits that, if the Wilsons have standing to petition the court for adoption, there are numerous fact questions to be resolved. As authority for its conclusion that the Wilsons lack standing, the home cites *Lutheran Social Service, Inc. v. Farris*, 483 S.W.2d 693 (Tex.Civ.App.—Austin 1972, writ ref'd n. r. e.). There the adoption agency specially excepted to a couple's petition for adoption of a child of which the agency was managing conservator. Exception was made because the petition failed to allege that the consent of the agency had been obtained. The court held the agency's consent was necessary and that the trial court should have sustained the exception. We note this case was decided before the effectiveness of the Texas Family Code.

Tex. Family Code Ann. § 16.05 (1975), provides that if a managing conservator of a subject child has been appointed, consent of the managing conservator is required for

adoption unless the managing conservator is the petitioner for adoption. However, § 16.05(d) provides that if the court finds the managing conservator's consent is refused, or has been revoked without good cause, the court can waive the requirement. Here the Wilsons have alleged that consent has been withheld without good cause.

The home urges that the Wilsons lack standing to petition for adoption because they are legal strangers to the child. We conclude this contention is without merit and begs the question. The express purpose of the statutory scheme of adoption is to create a parental relationship with the rights, powers, and responsibilities pertaining thereto between persons who prior to the adoption were generally legal strangers. We fail to discern how the fact the Wilsons are legal strangers, although blood kin to the child, disables them from petitioning for adoption. Tex. Family Code Ann. § 16.02 (1975), provides that any adult is eligible to adopt a child who is eligible to be adopted. Therefore, we conclude the fact that the Wilsons are legal strangers does not mean as a matter of law they are precluded from petitioning the court for adoption.

Although the Wilsons admit they have no legal relationship with or rights to the child, we recognize that a blood relationship exists between the Wilsons and the child. While we do not hold that this relationship gives the Wilsons any legal rights or interest, we note they have an interest in this particular child as a natural guardian. *Lamar v. Micou*, 114 U.S. 218, 5 S.Ct. 857, 29 L.Ed. 94 (1885). Since a legal relationship is not a requirement for standing to petition for adoption in this case, we hold the Wilsons have standing to petition the court for adoption. The trial court erred in rendering the summary judgment against them.

The judgment of the trial court is reversed and the cause is remanded for further proceedings.

MASSEY, C. J., concurs.

HUGHES, J., dissents.

MASSEY, Chief Justice, concurring.

Any decision of the controlling factor whether adoption of a child by prospective adoptive parents would be in best interests of the subject child, would raise the question: "Compared to its interests if not adopted at all or if adopted by other prospective adopted parents?"

Our public policy is committed to the proposition that under circumstances such as those presented to the court that to be adopted by proper adoptive parents is to the greater interest of the child than not to be adopted at all. Thereby part of the question posed is answered. (This is the ordinary adoption case.) However, as applied to the remaining part the question would be upon the matter of which pair of competing prospective adoptive parents should be preferred, in the best interest of the child.

Under our practice the adopted child may not in later years open the files to undertake research upon his ancestry in the event he might desire to do so. At least there is impediment to be overcome for him to look into the files. Indeed, even if they be opened it would be a rare case where the research would be successful. The writer, whose hobby is ancestral research, receives correspondence from all over the United States from persons who were adopted as children and thus found themselves hampered.

Since the publication of the Alex Haley book *Roots*, there has been tremendous stimulus for persons seeking to ascertain when their immigrant ancestors came to America, from where, and even into family well-springs in foreign countries.

Whether to be enabled to do so, or even be able to make the attempt, be in the interest of an adopted child may be a question to be decided by the trial court. Under circumstances of this case, I believe it to have arisen as a question. Of course there might be provision by the court in preservation of the ability of the child to make research, should in later years he might so desire, though permitted to be adopted by a couple other than his blood kindred.

HUGHES, Justice, dissenting.

I respectfully dissent to the reversal of the judgment of the trial court in this matter and would affirm its action for the following reasons:

1. A suit for adoption of a child may not be filed or prosecuted by any individual who is not a "person with an interest in the child" within the meaning of Tex. Family Code Ann. § 11.03 (1975).

2. The paternal grandparents of an illegitimate child who has not been legitimated by the child's biological father are not by virtue of their blood relationship alone "person(s) with an interest in the child" within the meaning of Tex. Family Code Ann. § 1103 (1975).

3. A grandparent may not seek access to his or her grandchild pursuant to Tex. Family Code Ann. § 14.03(d) (Supp. 1978–79), after the parent-child relationship between the child's last surviving parent and the child has been terminated by judicial decree appointing as the child's managing conservator a licensed child-placing agency and authorizing placement of the child for adoption by that agency.

4. Blood relatives of a child who have not established a court-ordered relationship with the child prior to rendition of judgment terminating the parent-child relationship between the child and the child's living parents are not by virtue of their blood relationship alone "person(s) with an interest in the child" within the meaning of Tex. Family Code Ann. § 11.03 (1975).

5. Persons who are not "person(s) with an interest in the child" within the meaning of Tex. Family Code Ann. § 11.03 (1975), do not have standing to request a court to order placement of the child in their home by a licensed child-placing agency or to seek judicial review of a decision by the agency not to place such child in their home.

I view the holding in *Lutheran Social Service, Inc. v. Farris*, 483 S.W.2d 693 (Tex. Civ.App.—Austin 1972, writ ref'd n. r. e.) as the proper authority in this case and feel that the preservation of the integrity of the agency adoption process should be paramount.

## OPINION ON MOTION FOR REHEARING

SPURLOCK, Justice.

On motion for rehearing the Edna Gladney Home claims that by failing to discuss the relationship of § 11.03 and § 16.02 * we admit commission of "one of the classical errors of statutory construction: attempting to determine the meaning of one sentence of a statute without regard to the legislative intent revealed in the statute as a whole". It is true that there is no direct reference or citation to § 11.03. However, we thoroughly considered the entire scheme of adoptions and suits affecting the parent-child relationship prior to rendition of our judgment.

The home correctly states the general rule of § 11.03 that persons having an interest in a child may file suit to affect the parent-child relationship. The home points out that no exception to the general rule of § 11.03 is stated in § 11. Its position is that because there is no express exception § 11.03 has not been nor may be modified by any other provision of the code. We do not agree. We referred to standing to bring a petition for adoption. By that reference we contemplated that the general rule of § 11.03 was modified by the specific statutory provisions relating to adoption, particularly § 16.02. We noted that the statutory scheme for adoptions is for the purpose of creating a parent-child relationship between those who were previously legal strangers. We fail to see how this purpose is best served by denying access to the courts to those who are legal strangers. § 16.02 makes any adult eligible to adopt. Further, § 16.05(d) provides that the consent of the managing conservator to an adoption may be waived by the court under certain circumstances.

 Coupled together it is our opinion that the specific provisions relating to

* All statutory references are to Tex. Family Code Ann.

adoption modify the general rule of § 11.03. It is nonsensical to make any adult eligible to adopt and to provide that consent of the managing conservator may be waived by the court, and then to deny enjoyment of these provisions by holding that legal strangers cannot maintain a suit to adopt. It is well settled that the best interest of the child is of utmost importance. The home's position is that licensed adoption agencies shall be the final judges of the best interest of the child. It is our opinion that the legislature has vested the courts of this state with this power and responsibility.

■ Finally the home claims that the fact that it has vested prospective adoptive parents with possession of a child gives the prospective adoptees a "legally cognizable interest". We know of no requirement that an adoption agency participate in every adoption. § 16.02 states that any adult is eligible to adopt. Therefore we fail to discern how placement of a child by the home legally vests an interest in the possessors of the child and disqualifies all others. It is the best interest of the child with which we are concerned. It is our opinion that access to the courts of this state will best serve this goal.

Motion for rehearing is overruled.

HUGHES, J., dissents without further opinion.

