**HARRIS COUNTY CHILD WELFARE UNIT et al., Appellants,**

v.

**George CALOUDAS et ux., Appellees.**

No. 17414.

Court of Civil Appeals of Texas, Houston (1st Dist.).

Oct. 18, 1979.

George D. Ford, Jr. of the Harris County Child Welfare Unit, Gerald Scheve, Patricia Lykos, Mary Bacon, Houston, for appellants.

Fouts, Moore, Coleman & Royall, Donald R. Royall, Houston, for appellees.

Before COLEMAN, C. J., and DOYLE and WALLACE, JJ.

DOYLE, Justice.

Harris County Child Welfare Unit (HCCWU) and Mildred Rebstock (Appellants) bring this appeal from a judgment terminating the parent-child relationship between Mildred Rebstock and her minor daughter, Cindy Rebstock, (Cindy) and further allowing George and Beverly Caloudas (Appellees) to adopt the minor child. The questions before this court are whether the appellees, as foster parents, have standing to petition for termination of parental rights and adoption and whether the district court has jurisdiction to decide such a suit. We hold that the appellees have the standing to bring their petition and that the district court in which it was filed has exclusive jurisdiction to determine the issues raised.

We affirm.

Cindy was born to Mildred Rebstock in Harris County, Texas, on October 21, 1975. It is undisputed that at the time of her birth appellant had been using drugs and the child suffered some withdrawal symptoms. Approximately four months later, February 1976, Cindy was taken into custody by HCCWU pursuant to the emergency provisions of the Texas Family Code § 17.-01. Thereafter, HCCWU was appointed temporary managing conservator of the child and by agreement with Christian Child Help Foundation, (CCHF) Cindy was placed in the foster home of George and Beverly Caloudas. In March 1976, HCCWU filed a petition to terminate appellant Mildred Rebstock's parental rights alleging she had allowed the child to remain in dangerous surroundings; she had engaged in conduct endangering the child; and she had failed to support the child. No further action was taken in this cause. In October 1976, appellant was convicted of possession of drugs and was given a ten year probated sentence, conditioned, among other terms, upon her participation in the Alternative Drug Abuse Program. Appellant participated in the program for two years. During the first year, she was not allowed to visit her child, but in the second year, HCCWU initiated visitation between appellant and Cindy as a preliminary step in a program to eventually reunite Cindy and her mother. While appellant continued her rehabilitation, Cindy remained in the appellees' home. In March 1978, appellees instituted a suit to terminate the parent-child relationship between appellant and Cindy, and two men, each of whom was alleged to be Cindy's father. Both men filed waivers disclaiming any interest in the proceedings and the matter went to trial without them as parties. Appellees further prayed that they be allowed to adopt Cindy. Appellees' suit was consolidated with the original suit

filed by HCCWU. In May, 1978, HCCWU amended their original petition for termination to a suit seeking managing conservatorship so that it could supervise the return of the child to her mother.

Trial was to a jury in October 1978, with the jury answering four special issues. By a preponderance of the evidence, the jury found:

1. Mildred Rebstock knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endangered the physical and emotional well being of the child.

2. Mildred Rebstock engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangered the physical and emotional well being of the child.

3. The termination of the parent-child relationship between Mildred Rebstock and Cindy would be in the best interest of the child.

4. The best interests of the child would be served by appointing George and Beverly Caloudas as managing conservator.

The court entered judgment on the jury verdict and allowed appellees to adopt the child.

Harris County Child Welfare Unit presents four points of error; appellant Mildred Rebstock presents one.

By their first two points of error, HCCWU complains the trial court erred in denying appellants' motions to dismiss appellees' suit on grounds of appellees' lack of standing, and further that appellees had violated a contract they executed upon being designated a foster home, which expressly forbids the adoption of any child in their care.

In the instant case, the court docket sheet does state "Motions denied (1–2 & 3)." It does not state if these are the same motions, and the record before this court does not show any judicial order regarding these motions, or whether appellant excepted to the judge's order. The docket sheet cannot stand as an order or substitute for such record. *Kollman Stone Industries, Inc. v. Keller,* 574 S.W.2d 249 (Tex.Civ.App.-Beaumont 1978, no writ); *Hamilton v. Empire Gas and Fuel Co.,* 134 Tex. 377, 110 S.W.2d 561 (1937, opinion adopted). Consequently appellant waived its special exception, and has not apprised this court of any record showing if, or why, the motions were denied.

On appeal, HCCWU asserts the violation of a contract specifically forbidding this adoption. At the trial level, however, HCCWU filed no pleadings alleging this theory. An appellant is limited to the theories upon which the case is tried and he may not appeal the case on new or different theories. *Brown-McKee, Inc. v. Western Beef, Inc.,* 538 S.W.2d 840 (Tex.Civ.App.-Amarillo 1976, writ ref'd n. r. e.). The contract was introduced into evidence over appellee's objection, so the trial of these issues was not by consent. Finally, although the contract was discussed throughout this litigation, appellant failed to request the submission of any issues regarding this theory. Rule 279, T.R.C.P., provides that a party waives an issue upon which he relies by failing to request its submission. *Dittberner v. Bell,* 558 S.W.2d 527 (Tex.Civ.App.-Amarillo 1977, writ ref'd n. r. e.); *Cramer v. White,* 546 S.W.2d 918 (Tex.Civ.App.-Fort Worth 1977, writ ref'd n. r. e.); *Hopkins v. Standard Fire Insurance Co.,* 554 S.W.2d 270 (Tex.Civ.App.-Houston [1st Dist.] 1977, no writ). Rules governing submission of special issues apply to child custody cases tried before a jury. *Fatheree v. Eddleman,* 363 S.W.2d 784 (Tex.Civ.App.-Amarillo 1962, no writ). Appellant waived its right to complain on appeal. Accordingly its first two points of error are overruled.

By points of error three and four, HCCWU generally contends that the district court had no authority to terminate the parental rights of appellant Mildred Rebstock without its concurrence, since it was the agency mandated by statute to determine and provide for the best interest of a child such as Cindy. It further argues that the right of natural parents to their

children is paramount and that once it had begun a program to reunite child and mother, public policy demanded that it be allowed discretion to pursue its objective and that the trial court erred in terminating the parental rights of Mildred Rebstock and appointing appellees managing conservator, since they were foster parents and lacked standing to bring their suit.

HCCWU cites many cases from foreign jurisdictions involving foster care contracts with state agencies and individuals. No guidance can be gathered from such references as each state follows its own statutory authority in these matters. Texas is no exception and pursuant to the constitutional mandate set forth in Art. V, § 8, the district courts have always exercised original jurisdiction and general control over minor children "under such regulations as may be prescribed by law." Consequently, with the enactment of the Texas Family Code, the rights, privileges, duties and responsibilities of agencies and persons dealing with minor children have been set out and defined in minute detail. No distinction is made between an authorized agency and a person. Tex.Fam.Code Ann. § 14.-02(b), 14.02(c) (Vernon 1975). Section 11.03 (1974) of the Code provides that any interested person may bring a suit affecting the parent-child relationship as such suit has been defined in Sec. 11.01(5) (1975) of the Code. It must be conceded that for the purposes of petitioning for managing conservator or adoption, there are no such entities as "legal strangers." Section 16.02 (1975) of the Code provides that any adult is eligible to adopt a child who is eligible to be adopted. Indeed, it has been recently held, as pointed out in appellees' excellent brief, that:

> "The express purpose of the statutory scheme of adoption is to create a parental relationship with the rights, powers, and responsibilities pertaining thereto between persons who prior to the adoption were generally legal strangers."

The foregoing excerpt is from the majority opinion in the case of *In the Interest of an Unnamed Child,* 584 S.W.2d 476 (Tex.Civ. App.-Fort Worth 1979, writ filed), which

has not yet been reported. The court further held that although the Edna Gladney Home had been appointed managing conservator, the paternal grand parents had standing to file their petition for adoption of their deceased son's child. The petition alleged that the Home had withheld consent without good cause pursuant to Sec. 16.-05(d) of the Texas Family Code (1974). The appellate court reversed the trial court's judgment denying the adoption and remanded the cause for further proceedings. The dissent relied on *Lutheran Social Service, Inc. v. Farris,* 483 S.W.2d 693 (Tex.Civ. App.-Austin 1972, writ ref'd n. r. e.) which held that where the petition failed to allege that consent of the agency had been obtained, the exception urged in the trial court should have been sustained. This case was tried before the effective date of the Texas Family Code.

We have examined all authorities submitted by the parties and conclude that the trial court had the jurisdiction and duty to carry out its responsibility to enter judgment based upon the best interest of the child. The appellees had standing to bring their petition. Points of error three and four are overruled.

By her one point of error, appellant Mildred Rebstock objects to jury finding number 3, contending that evidence of the best interest of the child was legally insufficient to terminate her parental rights. Where appellant directs her point to the legal sufficiency of the evidence, this is considered a no evidence point and as such the court must look to see if there is evidence to support the finding and disregard all inferences to the contrary. *Garza v. Alviar,* 395 S.W.2d 821 (Tex.1965); *In Interest Of E.S.M.,* 550 S.W.2d 749 (Tex. Civ.App.-Houston [1st Dist.] 1977, writ ref'd n. r. e.).

While there is no statutory definition of "best interest of the child," Tex.Fam.Code Ann. § 14.07(a) (Vernon 1975), appellant cites the case of *Holley v. Adams,* 544 S.W.2d 367 (Tex.1976) for some criteria in defining the best interest of the child. These factors include: (A) the desires of the child; (B) the emotional and physical needs of the child now and in the future; (C) the

emotional and physical danger to the child now and in the future; (D) the parental abilities of the individuals seeking custody; (E) the programs available to assist these individuals to promote the best interest of the child; (F) the plans for the child by these individuals or by the agency seeking custody; (G) the stability of the home or the proposed placement; (H) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and (I) any excuse for the acts or omissions of the parent. In its charge to the jury, the court set forth these same factors in its definition of best interest so we must assume that the jury considered each of them during its deliberations. As shown in the more than 1400 pages of testimony in this cause, there is evidence that the best interest of the child would be served by staying in the foster home of the appellees. Testimony by neighbors, a Family Court Services investigator and two psychologists lauded the parental abilities of appellees and further testified the child should stay with them. There is ample evidence that termination of the parental rights of appellant Mildred Rebstock was in the best interest of the child, Cindy. We overrule her lone point of error.