Arthur Charles PRATT, Appellant,

v.

**TEXAS DEPARTMENT OF HUMAN RESOURCES, Appellee.**

No. 9221.

Court of Civil Appeals of Texas, Amarillo.

March 30, 1981.

Rehearing Denied April 22, 1981.

Miner & Hill, Hal Miner, Amarillo, for appellant.

Michael D. Meredith, County Atty., Dumas, and Natalyn Collins, Lubbock, for appellee.

Dubuque, Smoot & Foster, Steven M. Smoot, Dumas, guardian ad litem.

COUNTISS, Justice.

Appellant Arthur Charles Pratt (hereafter "Pratt") attempted, without success in the trial court, to obtain the transfer of a suit affecting the parent-child relationship from Moore County to Potter County and to modify the managing conservatorship of two children. The transfer was denied after the court of continuing jurisdiction concluded that the residence of the children in question was not in Potter County. The motion to modify was dismissed after the court of continuing jurisdiction concluded Pratt did not have standing to file the motion to modify. We affirm.

The 69th District Court of Moore County is the court of continuing jurisdiction for the children as a result of a prior proceeding terminating parental rights of the biological parents and appointing appellee Texas Department of Human Resources (hereafter "DHR") as managing conservator. Pratt and his wife were granted pos-session of the children in May of 1978 by DHR. They also were granted written consent to adopt the children. The children remained in the Pratts' home in Amarillo, Potter County, Texas, as potential adoptive children, until September 10, 1979, when they were removed and placed in foster homes outside of Potter County. Apparently they were removed from the Pratts' home because the Pratts had separated and indicated an intention to divorce. DHR also transmitted to Mr. Pratt a revocation of the consent to adoption.

On October 10, 1979, in the 69th District Court, Mr. Pratt filed his motion to transfer to Potter County and his motion to modify the managing conservatorship. In his motion to transfer Pratt alleged the principal residence of the children to be Potter County, Texas, because they resided there with him from May of 1978 until removed by DHR, and contended that transfer of the suit to a district court of Potter County was mandatory under Tex.Fam.Code Ann. § 11.-06 (Vernon 1975).[1] The trial court overruled the motion to transfer.

The trial court subsequently heard a motion to dismiss, presented by the guardian ad litem, which challenged the standing of Pratt to file a motion to modify the managing conservatorship of the children. The court granted the motion to dismiss and ordered all costs, including $700 in fees for the guardian ad litem, to be taxed against Pratt.

Pratt presents four points of error to this court. The first two assert error in the overruling of the motion to transfer, the third asserts error in the dismissal of his motion to modify and the fourth asserts error in awarding attorney's fees. We will consider the points in the order stated.

■ We will first determine whether transfer of this case to Potter County was mandatory, as Pratt contends in his first point of error, under sections 11.06(b)[2] and

1. All section references hereafter refer to sections of the Texas Family Code Annotated. [Tex.Fam.Code Ann. (Vernon 1975 & Vernon Supp. 1980–1981)].

2. Section 11.06(b), as pertinent to this case, states:

§ 11.06. Transfer of Proceedings

(b) If a ... motion to modify a decree is filed in a court having continuing jurisdiction of the

11.04(c)(4)(C).[3] Under section 11.06(b), upon a showing that venue, ascertained under section 11.04, is proper in another county, the court of continuing jurisdiction has the mandatory duty to transfer the proceeding to the county of proper venue. *See Cassidy v. Fuller,* 568 S.W.2d 845, 847 (Tex. 1978); *Matter of Marriage of Allen,* 593 S.W.2d 133, 137 (Tex.Civ.App.—Amarillo 1979, no writ). Generally, under section 11.04, venue is in the county where the child resides, and generally the child resides in the county where his parents reside, except "if a managing conservator has been appointed by court order . . . the child resides in the county where the managing conservator . . . resides." Tex.Fam.Code Ann. § 11.04(c)(1) (Vernon Supp. 1980–1981). In this case, the children have no legal parents and a managing conservator has been appointed. There is no evidence, however, that the managing conservator resides in Potter County. Therefore, Pratt cannot deprive Moore County of its continuing jurisdiction because he has failed to carry his burden under section 11.06(b) of showing that venue is proper in another county.

Pratt argues that section 11.06(b) requires transfer if the children's principal residence has been in Potter County for more than six months. The length of residence in Potter County is immaterial, however, until venue has been established under one of the subdivisions of section 11.04. If Pratt had proved that the children resided in Potter County under one of the section 11.04 venue subdivisions, then the last two sentences of section 11.06(b) would be pertinent; absent such proof, they are not.

■ Pratt also relies on section 11.-04(c)(4)(C) which, under certain conditions, establishes a child's residence (and, therefore, venue of the case) in the county where the adult having care and control of the child resides. We construe the subdivision to mean care and control of the child when the motion to transfer is heard and not at some earlier time. Thus, the subdivision is not applicable because Pratt has not had care and control of the children at any time since September 10, 1979, over a month before the motions to transfer and modify were filed. Point of error one is overruled.

Pratt's argument under his second point of error is that the trial court abused its discretion by refusing to transfer the case to Potter County under section 11.06(c). That section permits, but does not require, the court to transfer the proceeding to a proper court in any other county in the state "for the convenience of the parties and witnesses and in the interest of justice." The record indicates that, at the time of the transfer hearing, most of the potential witnesses on the motion to modify

suit, the court, on the timely motion of any party, and on a showing that venue is proper in another county . . . shall transfer the proceeding to the county where venue is proper . . . . However, if the basis of the motion is that the child resides in another county, the court may deny the motion if it is shown that the child has not resided in that county for at least six months. In computing the period of time during which the child has resided in that county, the court shall not require that the period of residence be continuous and uninterrupted but shall look to the child's principal residence during the said six-months period. Tex.Fam.Code Ann. § 11.06(b) (Vernon 1975).

**3.** Section 11.04, as pertinent to this case, states:

§ 11.04. Venue

(a) Except as otherwise provided in this subtitle, a suit affecting the parent-child relation-

ship shall be brought in the county where the child resides.

\* \* \* \* \* \*

(c) A child resides in the county where his parents (or parent if only one parent is living) reside, except that:

(1) if a managing conservator has been appointed by court order . . . the child resides in the county where the managing conservator . . . resides;

\* \* \* \* \* \*

(4) if the child is under the care and control of an adult other than a parent and . . .

(C) the person whose residence determines the residence of the child under this section has left the child under the care and control of the adult, the child resides where the adult having care and control of the child resides . . . .

\* \* \* \* \* \*

Tex.Fam.Code Ann. § 11.04 (Vernon 1975 & Vernon Supp. 1980–1981).

lived in Amarillo, Texas, which is located in Potter and Randall counties. One of the DHR caseworkers, however, resided in Dalhart, Texas, and the children had been placed in foster homes in Wheeler and Randall counties, Texas.

Because section 11.06(c) gives the trial court discretionary authority, Pratt correctly perceives that he can prevail on this point only by establishing an abuse of that discretion. The concept of abuse of discretion is not easily defined. It is less than bad faith or intentional wrong but more than an error in judgment. When the appellate court is reviewing a matter within the trial court's discretion, the appellate court cannot simply substitute its own judgment for that of the trial court. The test is whether the trial court's decision was arbitrary or unreasonable. *Bennett v. Northcutt,* 544 S.W.2d 703, 706–07 (Tex.Civ.App. —Dallas 1976, no writ).

On the record before us, we cannot conclude the trial court was arbitrary and unreasonable in refusing to transfer this case to Potter County. This court judicially knows that Moore County is adjacent to Potter County and the distance between the county seats is approximately forty-five miles; thus, no significant inconvenience is involved for the Amarillo witnesses and there is no contention that justice would be better served in Potter County than in Moore County. At the time of the transfer hearing, the record before us indicates that the DHR caseworker assigned to the case and the children lived in locations other than Potter County. DHR's counsel and the guardian ad litem also listed addresses outside Potter County. Thus, while transfer would be more convenient for Pratt, it would not necessarily be more convenient for DHR or the children. In view of the wording of section 11.06(c), the trial court should evaluate "convenience of the parties" and "interests of justice" from the standpoint of all of the parties and witnesses and balance the various interests. We must presume the trial court did so here and we cannot conclude it acted arbitrarily or unreasonably. Point of error two is overruled.

Pratt's third point advances error by the trial court in dismissing his motion to modify for lack of standing. His argument is based on sections 11.03 and 14.08(a) which, he contends, give him standing to seek the modification. In order to resolve the matter, a review of the purpose and language of the pertinent statutes is necessary.

The managing conservatorship of a minor child should be the most stable of the artificial relationships between adult and child created by the Family Code. The managing conservator controls the life of the child, under section 14.02, and the pattern established by the managing conservator should not be easily disturbed. The legislature recognized this fact when, in section 14.08(c)(1), it established a dual and onerous burden for change of managing conservator by requiring proof of a material and substantial change in the circumstances of the child or parent so drastic that (1) retention of the existing managing conservator would be injurious to the child's welfare and (2) appointment of a new managing conservator would be a positive improvement for the child.

The basic question before this court then is: who should be permitted to enter the courtroom to seek a change in managing conservatorship? If Pratt's position is accepted, any person would have standing to seek modification and appointment as managing conservator. We do not think the statutes will support a position of that breadth. *See Texas Family Code Symposium,* 8 Tex.Tech.L.Rev. 19, 86–87 (1976); Comment, 27 Baylor L.Rev. 725, 738–39 (1975).

By article V, section 8, of the Texas Constitution, the district court is granted "original jurisdiction and general control over . . . minors under such regulations as may be prescribed by law." The regulations prescribed by law for minors, as pertinent to this case, are set out in Title 2 of the Texas Family Code Annotated. Under section 11.03 of the general provisions, a suit affecting the parent-child relationship may be brought "by any person with an interest

in the child ...." More specifically, under section 14.08(a) a motion requesting modification of the minor's managing conservator may be brought by "any party affected by the order ... to be modified ...."

█ The Family Code does not define either of the above phrases. Two Courts of Civil Appeals have confronted this problem and have reached opposite results in cases indistinguishable in principle. *Doe v. Roe*, 600 S.W.2d 378 (Tex.Civ.App.—Eastland 1980, writ ref'd n. r. e.); *Glover v. Moore*, 536 S.W.2d 78 (Tex.Civ.App.—Eastland 1976, no writ); *Watts v. Watts*, 573 S.W.2d 864 (Tex.Civ.App.—Ft. Worth 1978, no writ). The *Doe* case held that the biological father who had not legitimized the child was not a party affected by an order of conservatorship under section 14.08 and affirmed the dismissal of the father's motion to modify. The *Glover* case held that a biological mother whose parental rights had been terminated did not have a justiciable interest in the child under section 11.03 that would permit her to seek modification of an order of conservatorship and affirmed the dismissal of her motion to modify. The *Watts* case, on the other hand, held that a paternal grandfather was a party affected by an order of conservatorship and reversed the dismissal of the grandfather's motion to modify. The biological father in *Doe*, the biological mother in *Glover*, and the grandfather in *Watts*, had a far greater "interest' in the child than Pratt has in these children. They did not, however, have an interest contemplated by section 11.09, as discussed below. Thus, like Pratt, they were legal strangers to the child. Doe and Watts, like Pratt, were also strangers to the original litigation where the managing conservator was appointed. After careful consideration of the foregoing cases and the applicable statutes, we agree with the trial court that Pratt does not have standing.

█ Sections 11.01 through 11.20 establish the general guidelines for suits affecting the parent-child relationship under Title 2 and section 11.03, as noted above, permits "any person with an interest in the child" to bring the suit. Section 11.09 identifies the persons to whom service of citation must be given when the petition is filed.[4] We consider section 11.09 to be a legislative determination of the persons who have a relationship with the child of sufficient legal dignity to be entitled to participate in an action involving the child. Therefore, unless modified by subsequent provisions of Title 2,[5] the persons listed in section 11.09 are the persons who have "an interest in the child" that gives them standing to bring a suit affecting the parent-child relationship. The courts should not be open to "any person" who desires to change managing conservatorship. They should be and are by statute open to any person having an interest in the child, which we construe to mean an interest specifically recognized in the statutory scheme devised by the Legislature for these matters. Pratt does not have such an interest under section 11.03. *See Glover v. Moore*, 536 S.W.2d at 79–80.

Pratt likewise is not granted standing under section 14.08(a), for two reasons. Section 14.08(a) gives standing only to "any party affected" by the order to be modified. First, Pratt was not a party in the original appointment proceeding. *Doe v. Roe*, 600 S.W.2d at 379. Second, he is not affected by the order, any more than any other member of the general public is affected. *See Southern Surety Co. v. Arter*, 44 S.W.2d 913 (Tex.Comm'n App. 1932, judgmt. adopted). He does not have, and

---

4. For purposes of a motion to modify the managing conservatorship, those persons are (1) the managing conservator; (2) the possessory conservator; (3) persons having access to the child under court order [*e. g.*, grandparents, section 14.03(d)]; (4) persons required by law or court order to provide for support of the child; (5) guardians of the person and/or estate of the child; and (6) each parent whose parental rights have not been terminated or process waived under section 15.03(c)(2). Tex.Fam. Code Ann. § 11.09(a) (Vernon Supp. 1980–1981).

5. *See, e. g.*, sections 13.01 and 16.02 and *In Interest of Unnamed Child*, 584 S.W.2d 476 (Tex.Civ.App.—Ft. Worth 1979, writ ref'd n. r. e.).

has never had, a legal or justiciable interest in the children and the order has not deprived him of any right he ever possessed.

We hold, therefore, that Pratt does not having standing under either section 11.03 or section 14.08(a) to file a motion to modify managing conservatorship. Pratt's argument to the contrary is based on *Watts v. Watts, supra*, and on adoption cases that give standing to any person to maintain an adoption suit. *Harris County Welfare Unit v. Caloudas*, 590 S.W.2d 596 (Tex.Civ.App.— Houston [1st Dist.] 1979, no writ); *In Interest of Unnamed Child*, 584 S.W.2d 476 (Tex. Civ.App.—Ft. Worth 1979, writ ref'd n. r. e.). We decline to follow the *Watts* case, for the reasons set out above. We do not regard the adoption cases as authoritative on standing to modify managing conservatorship. As illustrated in footnote five, *supra*, those cases find standing for legal strangers in section 16.02 of the Code, which extends eligibility to "any adult" to adopt a child who may be adopted. We do not have a statute declaring any adult eligible to modify a managing conservatorship. Point of error three is overruled.

Pratt's fourth point of error states the trial court erred in awarding the attorney ad litem a fee of $700 when there is no evidence on attorney's fees. Pratt and DHR have stipulated that no evidence on attorney's fees was presented when the motion to dismiss was heard.

The initial difficulty with the point of error is that the record before us does not reflect the appointment of, or award of attorney's fees to, an attorney ad litem. Thus, there is nothing before us to review. *Texas & New Orleans Railroad Company v. Hayes*, 156 Tex. 148, 293 S.W.2d 484, 487 (1956).

 The record does reflect appointment of a guardian ad litem, in accordance with section 11.10, and the award of $700 to the guardian ad litem, taxed as part of the costs of the case. If that is the event to which the fourth point of error is directed, the award is not reversible error. The award of compensation to a guardian ad litem is discretionary with the trial court

and reversible only if an abuse of discretion is apparent from the record. *Poston v. Poston*, 572 S.W.2d 800, 802–03 (Tex.Civ. App.—Houston [14th Dist.] 1978, no writ).

The record before us does not contain testimony on the value of the guardian ad litem's services. It does, however, reflect substantial activity by the guardian ad litem, including the filing of pleadings, motions and trial briefs. Thus, we cannot conclude there was an abuse of discretion by the trial court in awarding $700 to the guardian ad litem as compensation for his services. *Poston v. Poston*, 572 S.W.2d at 803.

The judgment of the trial court is affirmed.