· IN RE C.T. and T.T., Relators

NO. 15–0098

Supreme Court of Texas.··

Opinion delivered: June 10, 2016··

Krista Balekian Hayes, Balekian Hayes PLLC, Dallas, Cecilia M. Wood, Law Offices of Cecilia M. Wood, P.C., Austin, for Relators.

Ladeitra Dshun Adkins, Law Office of LaDeitra Adkins, Dallas, Delia Ann Gonzales, Law Office of Delia A. Gonzales, Dallas, Charles W. Vaughn, Dallas County Public Defenders Office, Dallas, Laura Anne Coats, Dallas District Attorney's Office, Dallas, Sandre Lorraine Streete Moncriffe, Asst. District Attorney- Juvenile Div., Dallas, for Real Parties in Interest.

David Charles Gibbs III, Gibbs Law Firm, P.A., Bartonville, for Amicus Curiae The National Center for Life and Liberty, Inc. and The Texas Home School Coalition Association.

·JUSTICE GUZMAN, dissenting·to the denial of the petition for writ of mandamus.

In November 2013, the Texas Department of Family and Protective Services removed a child from the relators' care and custody under an emergency order. More than two years later, the child remains in the Department's custody even though the mandamus record is devoid of evidence supporting the limited statutory grounds allowing the Department to retain conservatorship following an emergency removal, and even though trial on the Department's conservatorship petition did not commence before expiration of a statutorily mandated dismissal deadline applicable to Department-filed conservatorship suits. The ·issues raised in the mandamus petition are undoubtedly worthy of the Court's attention.

First and foremost, a child is at the center·of the dispute. The child is directly and immediately impacted by the legal issues presented. The matters at issue also carry significant jurisprudential import because mandamus relief hinges on the interpretation and application of statutory requirements designed to ensure (1) children removed from their homes under emergency orders—without notice or a hearing— are promptly returned, (2) Department-initiated suits affecting the parent-child relationship are resolved expeditiously, and (3) children in the Department's care achieve permanency and stability. Just as significantly, the central issue involves "the oldest of the fundamental liberty interests"—the inherent right of parents to direct their children's upbringing.[1] Misapplication of statutory constraints on the state's power necessarily encroaches on the rights and "high duty" of parents to raise their children.[2] Because further consideration of these important issues is merited, I respectfully dissent from the denial of relators' motion for rehearing of the petition for writ of mandamus.

---

1. *Troxel v. Granville*, 530 U.S. 57, 65, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000) (plurality op.).

2. *See Pierce v. Soc'y of Sisters*, 268 U.S. 510, 535, 45 S.Ct. 571, 69 L.Ed. 1070 (1925) ("The child is not the mere creature of the state; those who nurture him and direct his destiny have the right, coupled with the high duty, to recognize and prepare him for additional obligations.").

## I. Background

In December 2011, I.C.'s biological mother signed an affidavit relinquishing her parental rights and designating C.T. and T.T. (the Relators) as I.C.'s temporary managing conservators and prospective adoptive parents. At the time, the Relators were providing care for seven children, including I.C., and had already adopted two of I.C.'s siblings. The Relators were appointed I.C.'s temporary managing conservators as part of adoption proceedings they instituted in Tarrant County in January 2012.

On November 20, 2013, the Texas Department of Family and Protective Services obtained an emergency order authorizing the removal of all seven children from the Relators' home without prior notice or hearing, as authorized by statute. After the children were removed, the Department filed a suit affecting the parent-child relationship (SAPCR) in Dallas County against the Relators and I.C.'s biological mother, seeking to assume conservatorship of I.C. from the Relators, terminate the biological mother's parental rights, and obtain appointment as I.C.'s permanent managing conservator.

In accordance with section 262.201 of the Texas Family Code, which governs emergency removals, the trial court held a full adversary hearing on January 7, 2014, to determine whether emergency removal was imperative for the children's physical health and safety and whether the Department's continued possession of the children was necessary for their safety.[3] TEX. FAM. CODE § 262.201(a), (a–3), (b). At the hearing, the Department presented evidence that (1) the children in Relators' care were homeschooled; (2) two of the children (a nine-year-old and four-year-old) were found riding bicycles unsupervised approximately a quarter to a half mile away from their house;[4] and (3) one of the Relators may have practiced law without a license by drafting legal documents.[5] After the hearing, the trial court ordered the Department to return some of the children to the Relators, with the condition that the Relators enroll the returned children in public school to obtain educational assessments.

The trial court made no express finding that any child's physical health or safety was endangered, explicitly disclaiming that two children wandering away from home on one occasion "rise[s] to the level of removal." Moreover, the evidence presented did not support an implied finding that emergency removal was necessary due to imminent danger to the children's physical health and safety. Despite the return of some children to the Relators, the trial court commented that "it may not necessarily be in [the] best interest [of any of the children] to remain where they are [with the Relators]." But, incongruously, the trial court refused to return I.C. to the Relators and opined without elaboration that it might not be in I.C.'s "best interest" to be adopted by the Relators. Following the emergency hearing, I.C. and one other child remained in foster care under the Department's temporary man-

---

3. By statute, the trial court must have a full adversarial hearing within fourteen days after removal, except for good cause shown. TEX. FAM. CODE § 262.201(a), (a–3). There is no allegation that the hearing in this case was untimely.

4. I.C. was not one of the children riding bicycles unsupervised.

5. One of the Relators drafted some documents in connection with the adoption of I.C.'s siblings and also drafted a power of attorney and safety plan regarding one of the other children in the Relators' care.

aging conservatorship while I.C.'s biological siblings and other children were returned to the Relators' home.[6]

Because the Department's SAPCR filings requested termination of parental rights and appointment as I.C.'s managing conservator, the Department's suit was subject to mandatory dismissal by Monday, November 24, 2014, unless a trial on the merits had commenced or the trial court granted a valid extension that complied with the statutory prerequisites. *See id.* § 263.401(a) ("Unless the court has commenced the trial on the merits or granted an extension under [the appropriate subsection], on the first Monday after the first anniversary of the date the court rendered a temporary order appointing the department as temporary managing conservator, the court shall dismiss the suit affecting the parent-child relationship filed by the department that requests termination of the parent-child relationship or requests that the department be named conservator of the child."). At a pre-trial hearing on June 30, 2014, the trial court orally ordered an extension over the Relators' objections, stating an extension was warranted because the Relators wanted a jury trial and several children were involved. *See id.* § 263.401(b) ("Unless the court has commenced the trial on the merits, the court may not retain the suit on the court's docket after the time described by Subsection (a) unless the court finds that extraordinary circumstances necessitate the child remaining in the temporary managing conservatorship of the department and that continuing the appointment of the department as temporary managing conservator is in the best interest of the child."). The trial court set trial for January 5, 2015, but neglected to set a new

dismissal date as required by statute. *See id.* § 263.401(b)(1).

On August 27, 2014, the SAPCR proceedings involving the children who had been returned to the Relators were dismissed. On December 12, 2014, after the original statutory deadline for dismissal had passed on November 24, 2014, the trial court memorialized its oral extension order and set a new mandatory dismissal deadline of May 11, 2015.

At a pre-trial hearing on December 17, 2014, the Relators moved to dismiss the Department's suit regarding I.C., based on the November 24, 2014 mandatory dismissal deadline. The Relators argued the extension was improper because (1) there were no extraordinary circumstances justifying an extension and (2) the trial court failed to set a dismissal date as required by statute. The trial court denied the motion.

During an ensuing discussion between the parties about the upcoming trial and the need to order a paternity test for a man claiming to be I.C.'s biological father, the attorney ad litem for I.C. argued the Relators had no continued interest in the case because the Relators' parental-termination and adoption proceedings in Tarrant County had been dismissed for want of prosecution on September 29, 2014. The Relators claimed they were never notified of the dismissal and argued they had standing regardless. The trial court directed the Relators to file affirmative pleadings to assert their continued interest in the underlying case.

Accordingly, on December 30, 2014, the Relators filed a counter-petition/cross-petition to intervene in the Department's termination and conservatorship suit, as-

---

**6.** One other child, C.T.'s biological son, was placed in his biological father's care. C.T. and the biological father signed a mediated settlement agreement, which appointed both as joint managing conservators.

serting standing on the basis of (1) their adoption of I.C.'s siblings and (2) the biological mother's affidavit of relinquishment, which designated Relators as I.C.'s prospective adoptive parents and granted the Relators legal rights and duties with regard to I.C. The Relators sought appointment as I.C.'s permanent managing conservators and termination of I.C.'s biological parents' rights. The pleadings also stated the Relators' intention to institute adoption proceedings following a final judgment terminating I.C.'s biological parents' rights.

Thereafter, the Relators sought mandamus relief from the court of appeals and this Court, respectively, claiming the trial court clearly erred by (1) refusing to return I.C. at the conclusion of the January 2014 adversary hearing and (2) improperly extending the mandatory dismissal deadline. While the mandamus petition remained pending before this Court, the trial court ordered separate trials for the parental termination action against I.C.'s biological mother and the Relators' conservatorship claims.

On May 13, 2015, the trial court adopted a settlement agreement between I.C.'s biological mother and the Department, terminated I.C.'s mother's parental rights, and appointed the Department as I.C.'s permanent managing conservator. As the alleged biological father's paternity test demonstrated he was not the father, the unknown biological father's rights were also terminated. The trial court further set the case for a jury trial on the Relators' petition in intervention. On May 27, 2015, the Relators filed a second motion to dismiss after the extended dismissal deadline passed, and trial on the remaining claims regarding I.C. is pending.

## II. Discussion

Though procedurally and factually complex, the importance of the matters at issue compels our consideration. A child was removed from home, caregivers, and biological siblings without prior notice and a hearing. The strict statutory standards that permit such a removal require that children removed under those circumstances be promptly returned unless the court finds that an imminent threat to the child's physical health and safety necessitated the removal and the child would be in danger if returned home. The manner in which the statute was applied in this case is perplexing and warrants this Court's attention. In addition, the Court should address the trial court's failure to comply with the legislative mandate to quickly resolve SAPCR proceedings involving the Department—either on the merits or by mandatory dismissal—so children have a modicum of stability as soon as possible. *See id.* § 263.401 (mandatory dismissal deadline for SAPCR proceedings brought by the Department).

### A. Adversary Hearing Following Emergency Removal

Recognizing the need for an expedited process by which children can be removed from their homes in situations imminently threatening their physical health and safety, the Legislature enabled courts to issue emergency orders authorizing the Department to take possession of endangered children without prior notice or hearing. *See id.* § 262.102. An emergency removal order is thus "an extreme measure that may be taken only when circumstances indicate a danger to the physical health and welfare of the child and the need for [the child's] protection is so urgent that immediate removal from the home is necessary." *In re Pate*, 407 S.W.3d 416, 419 (Tex.App.–Houston [14th Dist.] 2013, orig. proceeding). To limit the profound detrimental consequences that can result from

unjustified emergency removal, the Legislature mandated that a full adversary hearing be held shortly after an emergency removal, so children who are not endangered can be returned to their loved ones as promptly as possible. *See* Tex. Fam. Code § 262.201(a), (b).

The Department bears the burden of proving it is entitled to maintain possession of the removed child because of the existence of "a continuing danger to the physical health or safety of the child." *Id.* § 262.201(c); *see In re Pate*, 407 S.W.3d at 420 (noting the Department failed to meet its evidentiary burden of establishing the statutory grounds); *In re Steed*, No. 03–08–00235–CV, 2008 WL 2132014, at *4 (Tex.App.–Austin May 22, 2008, orig. proceeding) (mem.op.) ("We find that the Department did not carry its burden of proof under section 262.201."). The Department may retain a child following an emergency removal only if:

the court finds sufficient evidence to satisfy a person of ordinary prudence and caution that:

(1) there was a danger to the physical health or safety of the child … caused by an act or failure to act of the person entitled to possession and for the child to remain in the home is contrary to the welfare of the child;

(2) the urgent need for protection required the immediate removal of the child and reasonable efforts, consistent with the circumstances and providing for the safety of the child, were made to eliminate or prevent the child's removal; and

(3) reasonable efforts have been made to enable the child to return home, but there is a substantial risk of a continuing danger if the child is returned home.

Tex. Fam. Code § 262.201(b); *see also In re Pate*, 407 S.W.3d at 419. Absent these findings, a child removed under an emergency order must be returned to a person entitled to possession. Tex. Fam. Code § 262.201(b); *see In re E.C.R.*, 402 S.W.3d 239, 247 (Tex. 2013) ("Continued removal is warranted only if the child faces a continuing danger to his physical health or safety.").

The trial court neither made these essential fact findings nor conducted the correct legal inquiry. Rather than limiting its inquiry to the statutorily mandated factors, the trial court considered superfluous factors unrelated to any immediate or ongoing risk to the children's physical health and safety. Among other evidence, the trial court considered testimony regarding the children's education, as evidenced by the court's express disapproval with the Relators' decision to homeschool the children. Although the quality of a child's education may be a relevant factor when a trial court is issuing permanent orders based on a best-interests-of-the-child inquiry, it is immaterial to the pertinent issue at an adversary hearing under section 262.201(b)—whether the child faced an immediate threat that justified removing the child from the home without prior notice or a hearing and whether the threat is ongoing. The trial court necessarily found no threat to the children's physical health or safety to justify removal; otherwise it could not have returned the other children to the Relators' home. There is no evidence that I.C.'s circumstances with respect to health and safety were materially different from the other children. Accordingly, the trial court had no discretion to refuse to return I.C. to the Relators if they were legally entitled to possession of her at the time of the adversary hearing. *See* Tex. Fam. Code § 262.201(b) ("shall order the return of the child").

When the adversary hearing was held on January 7, 2014, the Relators assert they were I.C.'s managing conservators

and possessory conservators, entitling them to possession of I.C. under section 262.201. *See id.* According to the Relators, they had been appointed temporary managing conservators by a Tarrant County court, and the voluntary-relinquishment-of-parental-rights affidavit I.C.'s biological mother executed gave them the rights of possessory conservators. *See id.* § 161.104. As possessory conservators, the Relators would have the right and duty to take care of I.C. and provide for her needs. *See id.* § 153.376 (listing the rights and duties of a non-parent possessory conservator, including "the duty of care, control, protection and reasonable discipline" and "the duty to provide the child with clothing, food, and shelter"). Therefore, at the conclusion of the adversary hearing, if the Relators were legally entitled to possession of I.C., the trial court should have returned I.C. to their care during the pendency of the Department's proceedings, just as her biological siblings were.[7]

Because the trial court allowed the Department's continued possession of I.C. in the absence of any evidence to support statutorily mandated findings, I.C. remains in foster care during protracted legal proceedings. The trial court ignored the statutory constraints on its discretion in an emergency-removal situation and effectively disregarded the Legislature's expressed preference for maintaining the status quo of a child's living arrangements to provide as much stability and consistency in a child's life as possible. *Cf. Brown v. McLennan Cty. Children's Protective Servs.*, 627 S.W.2d 390, 394 (Tex. 1982) (noting that when parents give children up with voluntary-relinquishment affidavits, the children "cannot be snapped back at the whim of the parent" because "the Legislature was seeking some small amount of security and stability for children"); *In re S.N.Z.*, 421 S.W.3d 899, 909 n. 4 (Tex. App.–Dallas 2014, pet. denied) (explaining the burden of proof lies with the movant seeking to alter a custody arrangement to "show a material and substantial change in circumstances"); *In re M.N.G.*, 113 S.W.3d 27, 36 (Tex.App.–Fort Worth 2003, no pet.) (highlighting a "child's need for stability" and recognizing that "a change in custody usually disrupts the child's living arrangements and the channels of a child's affection, and in effect alters the entire tenor of the child's life"). Given the importance of the interests at stake and the grievous consequences that may ensue when a court fails to adhere to statutory mandates, the Court should consider whether the trial court's errors in this case necessitate extraordinary relief.

### B. Mandatory Dismissal

In an effort to minimize the amount of time children remain in foster-care limbo and to expedite permanency and stability, the Legislature enacted a mandatory dis-

---

7. Presumably the voluntary-relinquishment affidavit and the Tarrant County order appointing the Relators temporary managing conservators, which are in the mandamus record, legally entitled the Relators to possession of I.C., but the mandamus record does not establish whether these documents were before the court at the adversary hearing. *See* Tex. Fam. Code §§ 161.104 (explaining the rights of a party designated managing conservator in a voluntary-relinquishment affidavit are the same as those of a possessory conservator); 153.376 (detailing the rights and duties of a nonparent possessory conservator); 262.201 (listing a managing conservator as a party legally entitled to possession). Section 262.201 does not specify who bears the burden of proof on the legal-entitlement issue, if disputed, but it does not appear the existence of these documents were disputed at the adversary hearing as both parties alluded to the documents. If the documents were not before the trial court, however, it is possible the court did not commit clear error by refusing to return I.C. to the Relators at the conclusion of the adversary hearing.

missal requirement that applies to SAPCR proceedings filed by the Department. By "the first Monday after the first anniversary of [a] date the court" temporarily appoints the Department as temporary managing conservator, the court must dismiss a Department-initiated SAPCR that requests (1) termination of a parent-child relationship or (2) appointment as a child's conservator, unless a trial on the merits has commenced or the court has granted an extension. TEX. FAM. CODE § 263.401(a). A court can grant a single extension for up to 180 days, but it must find "extraordinary circumstances necessitate the child remaining in the temporary managing conservatorship" of the Department and continuing the appointment is in the child's best interests. *Id.* § 263.401(b). Requiring a finding of "extraordinary circumstances" was a 2005 addition to the statute, Act of May 31, 2005, 79th Leg., R.S., Ch. 268, § 1.470, and little case law has developed to explain the circumstances that qualify. The purpose of allowing a 180-day extension may have been to address those situations in which a family is actively working to address the concerns giving rise to the Department's SAPCR action and, hopefully, obviating the need to permanently sever the parent-child relationship.[8] However, at least one intermediate appellate court has concluded that the trial court's inability to set a jury trial until after the one-year dismissal date qualifies as an extraordinary circumstance, which was the basis for the extension granted in this case. *See In re T.T.F.*, 331 S.W.3d 461, 476 (Tex.App.–Fort Worth 2012, no pet.). This Court, however, has not yet provided guidance on this matter.

In any event, only one extension of no more than 180 days is permitted; deadlines may not be further extended even by agreement of the parties. *See In re Dep't of Family & Protective Servs.*, 273 S.W.3d 637, 643 (Tex. 2009) (explaining "the Legislature has prescribed with particularity how certain aspects of such suits must be conducted" and a "court cannot just enter an extension order," but must "make specific findings to support the extension order"). Moreover, the mandatory dismissal date may only validly be extended by a trial court order that (1) schedules a new dismissal date within 180 days, (2) makes additional necessary temporary orders to avoid delay, and (3) sets a trial date within the 180–day extension period. TEX. FAM. CODE § 263.401(b). If an extension order fails to set a new dismissal date, the extension is invalid, and in the absence of a valid extension, the Department's parental-termination and conservatorship suit must be dismissed if trial has not commenced on the merits within the initial one-year window. *See In re C.V.G.*, 112 S.W.3d 180, 184 (Tex.App.–Houston [1st Dist.] 2003, no pet.); *In re D.D.M.*, 116 S.W.3d 224, 231 (Tex.App.–Tyler 2003, no pet.). Any party who files a timely motion to dismiss the Department's SAPCR proceedings is entitled to dismissal, but an untimely motion waives a party's right to demand dismissal. *See* TEX. FAM. CODE § 263.402; *In re Dep't of Family & Protective Servs.*, 273 S.W.3d at 642 (explaining that mandatory dismissal deadlines are not jurisdictional).

In this case, the trial court orally extended the dismissal deadline at the June 30, 2014 pre-trial hearing, claiming an extension was necessary due to the request for a jury trial and the number of children involved. But the statutory mandate that SAPCR proceedings involving the Department be resolved expeditiously could be

---

**8.** Harriet O'Neill, *Court: Gatekeepers for Families in Crisis*, 70 TEX. B.J. 666, 668 (2007) ("By statute, these cases must be resolved within 12 months, with the availability of one 180–day extension if the family is making significant progress.").

undermined if a request for a jury trial alone is sufficient to create "extraordinary circumstances" necessitating an extension. This Court should provide guidance about the circumstances that can constitute "extraordinary circumstances" warranting extension of the dismissal deadline under the statute.

Even if otherwise justified, the extension order in this case is invalid because the trial court failed to set a new dismissal deadline prior to expiration of the initial dismissal deadline. *See In re C.V.G.*, 112 S.W.3d at 183–84 (concluding an extension order is invalid if a new dismissal deadline is not set); *In re D.D.M.*, 116 S.W.3d at 231 (same). The Relators objected to the extension at the time it was orally granted; the trial court did not issue a statutorily compliant order until after the mandatory dismissal date had passed; and the Relators filed a motion to dismiss on December 17, 2014, before a trial on the merits had commenced.[9] The trial court attempted to correct the extension order by setting a dismissal deadline on December 12, 2014, but the mandatory dismissal deadline of November 24, 2014, had already passed

without a valid extension order being issued or a trial on the merits commencing. Accordingly, the trial court was required to dismiss the Department's parental-termination and conservatorship-modification suit.

Unlike the Department's SAPCR, however, the Relators' suit seeking termination of the biological parents' rights and appointment as I.C.'s managing conservator is not subject to the mandatory dismissal statute. *See* TEX. FAM. CODE § 263.401(a) (applying only to SAPCR proceedings "filed by the department"). The question is whether the Relators' pending counter suit seeking some of the same relief sufficiently sustained the suit such that the trial court's failure to dismiss the Department's suit was harmless. In addressing the effect of a trial court's error in failing to dismiss a SAPCR proceeding under section 26.401, an intermediate appellate court upheld the trial court's final judgment terminating parental rights and appointing the Department managing conservator because the intervenors' claims were not subject to mandatory dismissal

---

9. The Department's challenge to the Relators' standing to seek dismissal under section 263.401 is curious because the Department named the Relators as parties to the SAPCR proceeding regarding I.C. As parties to the Department's suit, the Relators could file a motion to dismiss. *See* TEX. FAM. CODE § 263.402 (prohibiting *parties* from agreeing to extend deadlines beyond statutory limits and specifying how a *party* can waive right to object to a court's failure to dismiss).

Furthermore, the Relators were I.C.'s caretakers for almost two years, had been designated as I.C.'s prospective adoptive parents in the voluntary-relinquishment affidavit, and were temporarily appointed her managing conservators in an adoption suit. The Legislature intended for individuals with such a significant relationship with a child, like the Relators, to have standing in a SAPCR proceeding involving that child. *See id.* §§ 102.003(a)(9), (14) (providing standing to

"a person ... who has actual care, control, and possession of the child for at least six months ending not more than 90 days preceding the date of the filing of the petition" and to "a person who has been named as a prospective adoptive parent"), .009(a)(2), (12), (13) (entitling "a possessory conservator," "a prospective adoptive parent," and "a person designated as the managing conservator in a revoked or unrevoked affidavit of relinquishment" to service of citation); *see also Pratt v. Tex. Dep't of Human Res.*, 614 S.W.2d 490, 495 (Tex.Civ.App.–Amarillo 1981, writ ref'd n.r.e.) (persons entitled to service of citation "are the persons who have 'an interest in the child' that gives them standing to bring a suit affecting the parent-child relationship.... [The courts] are by statute open to any person having an interest in the child, which we construe to mean an interest specifically recognized in the statutory scheme devised by the Legislature for these matters").

and remained pending at the time of trial. *See In re D.D.M.*, 116 S.W.3d at 232–33. In that case, prospective adoptive parents had filed a petition in intervention seeking termination of parental-rights and appointment as D.D.M.'s managing conservators. *Id.* at 232. According to the appellate court, the trial court could issue valid parental-termination and conservatorship orders pursuant to the intervenors' claims, because the intervenors "fully participated in the trial" regarding the parental termination and the trial court had jurisdiction over the intervenors' claims. *Id.* at 232–33. Again, this Court has not considered a similar issue, and material differences exist between this case and *D.D.M.* because the Department's suit not only sought to terminate I.C.'s biological mother's parental rights, but also to alter the Relators' conservatorship rights. Furthermore, I.C.'s biological mother's rights were not terminated as a result of a fully-litigated trial, but as a result of the trial court's adoption of a settlement agreement that did not resolve the Relators' conservatorship claims and to which the Relators had not agreed. This Court should consider whether the trial court's order appointing the Department as I.C.'s permanent managing conservator remains valid in light of the Relators' parental-termination claims, even if the answer to that question ultimately precludes mandamus relief.

## C. Mandamus Relief

No interest is more compelling or more important than a child's best interests. For this reason, "[j]ustice demands a speedy resolution of child custody and child support issues." *Proffer v. Yates,* 734 S.W.2d 671, 673 (Tex. 1987). Neither I.C. nor the Relators have an adequate remedy by appeal. *See Walker v. Packer,* 827 S.W.2d 833, 839 (Tex. 1992). The reasons for this are both legal and practical.

The Department's appointment as I.C.'s temporary managing conservator and the trial court's refusal to return I.C. are temporary orders that are not subject to interlocutory appeal. *See* TEX. FAM. CODE § 105.001(e); *In re Pate,* 407 S.W.3d at 418–19 (concluding mandamus relief is appropriate when a child is not returned at the conclusion of an adversary hearing and there is no evidence of "any substantial risk of continuing danger if the child were to return home"). Similarly, the trial court's order terminating I.C.'s biological parents' rights and appointing the Department as I.C.'s permanent managing conservator is not an appealable, final order. Although the trial court ordered separate trials, it did not sever the causes. *See Hall v. City of Austin,* 450 S.W.2d 836, 837–38 (Tex.1970) (explaining the difference in the finality of judgments when a court orders separate trials rather than severance). Accordingly, the Relators' claims in the case remain pending, precluding the trial court's interlocutory order terminating the parent-child relationship and appointing the Department I.C.'s permanent managing conservator from being a final, appealable order. *See Jack B. Anglin Co., Inc. v. Tipps,* 842 S.W.2d 266, 272 (Tex.1992) ("A final judgment is one which disposes of all legal issues between all parties.").

Meanwhile, I.C. remains in foster care, subject to an unknown number of temporary placements, pending further proceedings relating to the Relators' conservatorship claims. And even after the Relators' conservatorship claims are decided in the trial court, any ensuing appeals will further delay permanency and stability for I.C. If the trial court clearly erred in failing to return I.C. to the Relators following the January 2014 hearing, the Relators are being continuously denied the right to possession of I.C. pending disposition of the proceedings, and the Relators

and I.C. are being denied familial companionship with one another. These rights can never be vindicated by a subsequent appeal because lost time together is irremediable.

## III.   Conclusion

The mandamus petition implicates issues of fundamental importance, such as strict statutory limits on the Department's ability to retain children removed from their homes without prior notice and a hearing; the right to homeschool children without fear of a governmental seizure; and the legislative mandate to quickly resolve SAPCR proceedings involving the Department to achieve permanency and stability as soon as reasonably practicable. Because these issues merit the Court's careful consideration, I would grant rehearing in this case. Accordingly, I respectfully dissent to the denial of the Relators' motion for rehearing.