Jose and Maria RODRIGUEZ, Appellants,

v.

Zan N.B. & Patsy S. MILES, Appellees.

No. 2559cv.

Court of Appeals of Texas, Corpus Christi.

April 28, 1983.

Nathan East, Portland, for appellants.

Michael P. O'Reilly, Auforth, Keas, O'Reilly & Matt, Corpus Christi, for appellees.

Before NYE, C.J., and UTTER and GONZALEZ, JJ.

## OPINION

GONZALEZ, Justice.

This is an appeal from a decree of adoption. The parental rights of the biological parents of the child were terminated and the Texas Department of Human Resources, hereinafter referred to as DHR, was named managing conservator. Thereafter, two foster parents, Jose and Maria Rodriguez, appellants, and Zan N.B. and Patsy S. Miles, appellees, filed petitions for adoption of the child. DHR opposed appellees' petition and consented that appellant adopt the child. After a trial, the trial court waived the consent to adopt of DHR and granted appellees' petition for adoption. DHR did not appeal but appellants in three points of error allege that the trial court erred in:

1. ruling that appellees had standing to "intervene" in their petition for adoption;

2. failing to order a social study of the home of appellees; and

3. waiving the consent of the managing conservator (DHR) to the adoption.

We affirm.

A brief history of the case is necessary in order to put these alleged errors in the proper context. In January, 1978, DHR received a referral of some severely neglected children. After conducting an investigation, DHR removed the children from their mother's home. One child was approximately 3½ months old ("younger child") and the other one was sixteen months ("older child"). They are siblings but with different fathers.[1]

The appeal concerns only the younger child who was placed by DHR with appellees. The older child was placed with other foster parents who are not involved in this appeal.

In April, 1978, DHR placed the older child back with her mother while the younger child continued to live with appellees where she stayed for the next four years. Ap-

---

1. There are other siblings: A six and a seven year old living with relatives and one or two other children born since these children were removed from the home.

proximately 2½ months later, DHR again found it necessary to remove the older child from her home and this time DHR placed this child in appellees' home. Shortly thereafter, DHR placed four additional children in appellees' home for foster care. After the older child had been in appellees' home for approximately six months, at appellees' request, DHR placed her in another foster home. She was ultimately placed in appellants' home.

In June, 1980, the parental rights of the biological parents of these children were terminated by the trial court and DHR was named managing conservator. What happened next is disputed. DHR's position at trial was that they offered the younger child to appellees for adoption but that appellees refused. Appellees denied this. Nonetheless, on July 21, 1981, DHR removed the younger child from appellees' home and placed her in appellants' home. On September 2, 1981, appellants filed a petition to adopt *both* children and DHR was appointed to do a social study.

On September 21, 1981, appellees filed a petition for adoption of the younger child. On September 29, 1981, DHR filed a consent to adoption of both children by appellants and intervened in appellees' petition for adoption of the younger child requesting that the trial court deny appellees' petition. Appellants also opposed appellees' petition for adoption. The trial court appointed a guardian ad litem to represent the interest of the younger child, at the trial.

After a trial, the trial court granted appellants' petition to adopt the older child and granted appellees' petition to adopt the younger child. At DHR's request, findings of fact and conclusions of law were filed. Only the appellants perfected this appeal.

In determining questions of adoption, the primary consideration is the best interest of the child. Tex.Fam.Code § 16.08. The Supreme Court of Texas said:

> "Section 16.08(a) of the Family Code indicates that the court may decree an adoption only when it is satisfied that adoption is in the best interests of the child. To effectuate this provision, the

trial court in adoption cases is invested with broad discretionary power in determining the best interests of the children. *In the Interest of Herd,* 537 S.W.2d 950, 953 (Tex.Civ.App.—Amarillo 1976, writ ref'd n.r.e.); *Colwell v. Blume,* 456 S.W.2d 174, 178 (Tex.Civ.App.—San Antonio 1970, writ ref'd n.r.e.); *Harris v. Tucker,* 245 S.W.2d 994 (Tex.Civ.App.—Waco 1952, writ ref'd n.r.e.). The trial judge is better situated to weigh all of the surrounding circumstances and arrive at a judgment which in his discretion will best protect the best interests of the child. No right to a jury exists in an adoption hearing. § 11.13. The judgment of the trial court should not be disturbed unless it appears from the record as a whole that there was an abuse of discretion. *In the Interest of Herd,* supra." *Green v. Remling,* 608 S.W.2d 905, 908 (Tex.1980).

## STANDING

With the above standard in mind, we will first consider appellants' first point of error wherein they allege that the court erred in ruling that appellees had standing to intervene with their petition for adoption.

First of all, appellees did not "intervene" in appellants' petition for adoption. They filed a petition for adoption of their own. It was given the same cause number as appellants' petition and filed in the same court because the court had continuing jurisdiction over the child.

Appellants rely on *Mendez v. Brewer,* 626 S.W.2d 498 (Tex.1982). *Mendez* involved termination of parental rights. In *Mendez,* the sole interest of the foster parents was their wish to adopt if the parent-child relationship with the natural parents was terminated. The foster parents' interest was wholly contingent upon a judgment of termination. The court held that this was not sufficient standing to entitle the foster parents to join in the suit.

*Mendez* is distinguishable from the case at bar. Here, a judgment for termination

of the natural parental rights had been entered. Upon termination, appellees then had standing pursuant to Tex.Fam.Code Ann. § 16.02 (1975) which provides that "[a]ny adult is eligible to adopt a child who may be adopted."

Appellants' first point of error is overruled. See *In the Interest of an Unnamed Child*, 584 S.W.2d 476 (Tex.Civ.App.—Fort Worth 1979, writ ref'd n.r.e.); *Harris County Welfare Unit v. Caloudas*, 590 S.W.2d 596 (Tex.Civ.App.—Houston [1st Dist.] 1979, no writ).

### SOCIAL STUDY

■ Appellants contend in their second point of error that the trial court erred in failing to order a social study of the home of the appellees as required by Section 16.-031 and Section 11.12 of the Tex.Fam.Code.

Section 16.031 of the Texas Family Code provides that:

"(a) In a suit affecting the parent-child relationship in which an adoption is sought, the court shall order the making of a social study as provided in Section 11.12 of this code and shall set a date for its filing."

Section 11.12 Social Study provides that:

"(a) In a suit affecting the parent-child relationship, the court may order the preparation of a social study into the circumstances and condition of the child and of the home of any person seeking managing conservatorship or possession of the child.

(b) The social study may be made by any state agency, including the Texas Department of Human Resources, or any private agency, or any person appointed by the court. *If an authorized agency is the managing conservator, the social study shall be made by the authorized agency.* The social study shall be made according to criteria established by the court." (Emphasis added.)

As is shown by the record of the arguments of counsel at the close of the evidence, neither DHR nor appellants complained to the trial court that a social study on appellees' home had not been made:

"MR. MANCIAS (DHR's attorney): May it please the Court, ... in this case the D.H.R. has presented consent that the Rodriquezes adopt _____ and _____ and the consent was based on their Adoption Committee that met back in July of '81. At that time they discussed the background on _____ and _____ and also on the Miles and on the Rodriguez families. They had studied both homes and all of the children involved. . . .

MR. EAST (Appellant's attorney): Third, I think that public policy should take a strong consideration of D.H.R. There has been ample consideration of not only two families, but three other families. *Much study was done and I believe that sufficient study and consideration was given all the homes* and public policy should dictate the D.H.R.'s recommendation because the D.H.R. has spent much time and effort. . . ." (Emphasis added.)

DHR actively opposed appellees' petition for adoption. By doing so, DHR left the realm of the impartial evaluator for the trial court and, instead, became an adversary for the appellants. It would not have been in the best interest of the child for the trial court to have ordered another social study (in addition to the one already filed by DHR) under these circumstances. The trial court heard considerable testimony from DHR and others as to the appellees' background, including: the appellees' capacity to take care of the child; their willingness to provide for the child on a permanent basis; and the standard of care provided by them. All of this was well known to DHR because they placed the younger child, as well as the older child, with the appellees and left the younger child in appellees' care for four years, which constituted almost the child's entire lifetime to that point. An additional social study on appellees' home would only have been cumulative of all of the evidence that was adduced at trial. There was no evidence that the appellees were unfit persons to adopt the child.

We hold that the social study that was filed complied with the requirements of 16.-031 and 11.12. The trial court did not abuse its discretion in failing to order an additional social study by the "authorized agency" named in the statute. If there was any error by such failure in this case, it was harmless. Rule 434, Tex.R.Civ.P. Appellants' second point of error is overruled.

### WAIVER OF CONSENT

 Appellants contend in their third point of error that the trial court erred in ruling that the requirement of consent by the managing conservator be waived.

Texas Family Code Ann. § 16.05 governs the disposition of this point. Section 16.05 provides in part:

"(a) If a managing conservator has been appointed, his consent to the adoption must be given in writing and filed in the record unless he is a petitioner, in which case his consent need not be given.

\* \* \* \* \* \*

(d) The court may waive the requirement of consent to the adoption by the managing conservator if it finds that the consent is being refused, or has been revoked, without good cause."

In its findings of fact, the trial court found:

\* \* \* \* \* \*

"(27) The intervenor, Department of Human Resources, although filing a consent to the adoption of said minor child, refused to file a consent to the specific adoption of said minor child by petitioners, Zan and Patsy Miles.

(28) The Intervenor, Department of Human Resources, does not have good cause for its refusal to specifically consent to the adoption of said minor child by petitioners, Zan and Patsy Miles."

Likewise, in its conclusion of law, the trial court concluded:

\* \* \* \* \* \*

"(4) The requirement to consent to an adoption by the managing conservator should be waived."

(5) It is in the best interest of minor child _____, that the petition for adoption filed herein by Zan and Pasty Miles be granted."

No abuse of discretion is shown. Appellants' third point of error is overruled.

The judgment of the trial court is affirmed.