**Petition for Writ of Mandamus Conditionally Granted and Opinion filed July 15, 2013.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-13-00452-CV

---

### IN RE JESSICA PATE, Relator

---

**ORIGINAL PROCEEDING**
**WRIT OF MANDAMUS**
**County Court at Law**
**Washington County, Texas**
**Trial Court Cause No. CCL-7338**

---

## OPINION

On May 24, 2013, relator Jessica Pate filed a petition for writ of mandamus in this court. *See* Tex. Gov't Code Ann. §22.221; *see also* Tex. R. App. P. 52. In the petition, relator asks this court to compel the Honorable Matthew Reue, presiding judge of the County Court at Law of Washington County, to vacate the

court's temporary order signed May 16, 2013. We conditionally grant writ of mandamus.

## BACKGROUND

On May 9, 2013, the Department of Family and Protective Services ("the Department") removed the child, J.L.C., from the home of relator Jessica Pate because the Department determined that Pate had left the child in an unsafe environment. The Department filed a petition seeking removal of the child and termination of the parents' rights. Attached to the Department's petition is the affidavit of Charlene Hunter, a Department case worker. In her affidavit, she stated that on May 7, 2013, the Department received a report alleging neglectful supervision of the child, a two-year-old. There were reports about no food in the home and illegal drug use. On May 9, 2013, Hunter went to the residence, and found that law enforcement officers were already speaking to two gentlemen at the residence. Pate was not at the home. The child was unsupervised, wearing an "extremely soaked" diaper, and had been sleeping in a bed also soaked with urine. One of the gentlemen admitted to using marijuana. Law enforcement officers found marijuana, scales, and a blowtorch in the residence.

The affidavit also described Pate's history with the Department:

Ms. Pate has a history with the Department as a victim child and as a parent. As an adult, Mr. [sic] Pate has been involved in one investigation that led to the removal of [J.L.C.] from her care previously. In 2011, Ms. Pate was transported to the emergency room after Ms. Pate intentionally cutting [sic] her arm with a knife while caring for [J.L.C.]. At the hospital, she tested positive for marijuana, methamphetamines, and phencyclidine (PCP). She was assessed by MHMR and was transported to Austin State Hospital. After she was

2

released from the hospital, Ms. Pate stated she was considering moving to Tyler with her brother and provided information on him. He was approved to supervise contact with her and her son. Upon arrival at the home in Tyler, Ms. Pate was observed to be home without a CPS approved person supervising her contact by a CPS caseworker from Tyler. A Parental Child Safety placement was done with family and Ms. Pate was asked to move from the home. Ms. Pate advised that she wanted to move with [J.L.C.] to Missouri because her brother could not care for her son long term without assistance. At this time, there were concerns about Ms. Pate's mental instability, her drug use, and her possibly fleeing the state with her son. An emergency removal was conducted by the caseworker from Tyler. Jessica Pate and the biological father of [J.L.C.], Christopher Cruce, were validated for neglectful supervision due to drug use and domestic violence that occurred while [J.L.C.] was present. During the conservatorship case, Ms. Pate completed her services and the child was returned to her care.

Hunter's affidavit concluded with the statement that, "All reasonable efforts, consistent with time and circumstances, have been made by the Texas Department of Family and Protective Services to prevent or eliminate the need for removal of the child."

On May 16, 2013, the trial court held a full adversary hearing. At the hearing, Hunter testified that the Department received notice that weapons were in the home where the child was staying. She went to the home of Franklin Tanner where she found J.L.C. in a soggy diaper with colored marker on his arms and legs. The two men in the home were arrested for drug possession. Pate gave verbal confirmation over the telephone for the Department to take the child to their offices. Pate agreed to a drug test and tested positive for amphetamine and methamphetamine. The child had previously been removed from Pate eight to nine

3

months before this incident. She tested positive for illegal drugs at that time as well. At the time of the previous removal, the Department checked to see if the father was a viable placement, but he was not.

Hunter testified that on May 9, 2013, at the time of the child's removal, the child was in immediate danger and there were no suitable caregivers including Pate and the father. Hunter checked out the paternal grandmother as a potential caregiver, but she was not appropriate. The Department determined during the previous case that the maternal grandmother was not appropriate. Pate's counsel asked about the maternal great-grandmother, but Hunter said she was not considered even though she was the person the child had been placed with during the previous encounter with the Department. Hunter testified that a child safety plan was not an option because of Pate's history with the Department.

Karen Harbors, Hunter's supervisor, testified that she began as a case worker and investigator with Pate in 2011. At that time, Harbors was contacted by a local hospital because Pate was in the emergency room with cuts on her arm and had tested positive for marijuana, methamphetamine, and PCP. At that time, Pate voluntarily permitted the child to live with Bobbie Forehane, Pate's grandmother and the child's great-grandmother. The father, due to domestic violence and drug use, was determined not to be a viable placement for the child. The Department removed the child on an emergency basis because Pate did not follow the safety plan in 2011. After that removal, Pate completed the safety plan and the child was returned to her in July 2012.

At the conclusion of the hearing, the trial court found "there was a danger to the child at the time of the removal and there is a continuing danger to the physical

health of the child and that continuation of the child in the home would be contrary to the child's welfare[.]" The court further found, "the department has made those efforts as needed by statute and, under the circumstances, that there was no family placement or other places to place the child that would alleviate the necessity for the removal."

In a single issue, relator contends the trial court erred in not returning the child to her at the conclusion of the hearing.

## MANDAMUS STANDARD

Mandamus relief is appropriate only if a trial court abuses its discretion and no adequate appellate remedy exists. *In re CSX Corp.*, 124 S.W.3d 149, 151 (Tex. 2003). The order about which Pate complains is a temporary order in a suit affecting the parent-child relationship, which is not subject to an interlocutory appeal under the Texas Family Code. Tex. Fam. Code Ann. § 6.507. Accordingly, Pate lacks a clear and adequate remedy at law and has thus satisfied the first requirement for mandamus relief. *See In re Tex. Dep't of Family & Protective Servs.*, 255 S.W.3d 613, 614 (Tex. 2008) (orig. proceeding); *In re Allen*, 359 S.W.3d 284, 288 (Tex. App.—Texarkana 2012, orig. proceeding).

## ANALYSIS

Section 262.104 of the Family Code provides that if there is no time to obtain a temporary restraining order or attachment before taking possession of a child, consistent with the child's health and safety, the Department may take possession of a child without a court order, but only on facts that would lead a person of ordinary prudence and caution to believe there is an immediate danger to

the physical health or safety of the child. Tex. Fam. Code Ann. § 262.104. After such an emergency removal, a court must hold an initial hearing, then a full adversary hearing within fourteen days of the child's removal. Tex. Fam. Code Ann. §§ 262.106, 262.201(a).

Section 262.201(b) provides:

At the conclusion of the full adversary hearing, the court shall order the return of the child to the parent, managing conservator, possessory conservator, guardian, caretaker, or custodian entitled to possession unless the court finds sufficient evidence to satisfy a person of ordinary prudence and caution that:

(1) there was a danger to the physical health or safety of the child which was caused by an act or failure to act of the person entitled to possession and for the child to remain in the home is contrary to the welfare of the child;

(2) the urgent need for protection required the immediate removal of the child and reasonable efforts, consistent with the circumstances and providing for the safety of the child, were made to eliminate or prevent the child's removal; and

(3) reasonable efforts have been made to enable the child to return home, but there is a substantial risk of a continuing danger if the child is returned home.

Pate argues that the evidence before the court at the adversary hearing was insufficient to sustain the findings. Specifically, Pate argues that the Department made no effort to return the child to Pate, nor did it identify any substantial risk of continuing danger if the child were to return home with Pate.

Removing a child from his home and parents on an emergency basis before fully litigating the issue of whether the parents should continue to have custody of

6

the child is an extreme measure that may be taken only when the circumstances indicate a danger to the physical health and welfare of the child and the need for his protection is so urgent that immediate removal from the home is necessary. *In re Steed*, No. 03–08–00235–CV, 2008 WL 2132014 (Tex. App.—Austin May 22, 2008, orig. proceeding) (memo. op.); Tex. Fam. Code Ann. § 262.201(b). Unless evidence demonstrates the existence of each of the requirements of section 262.201(b), the court is required to return the child to the custody of his parents pending litigation. *Steed*, 2008 WL 2132014, at *1.

Subsection (3) affords the trial court discretion to determine what efforts are "reasonable" to enable the child to return home. In this case, Pate argues there was no evidence presented at the hearing that the Department undertook any effort to return the child to his home. This requirement may be waived "if the court finds that the parent has subjected the child to aggravated circumstances." Tex. Fam. Code Ann. § 262.2015(a).

A court may find a parent has subjected the child to aggravated circumstances if:

(1) the parent abandoned the child without identification or a means for identifying the child;

(2) the child is a victim of serious bodily injury or sexual abuse inflicted by the parent or by another person with the parent's consent;

(3) the parent has engaged in conduct against the child that would constitute an offense under several provisions of the Penal Code;

(4) the parent voluntarily left the child alone or in the possession of another person not the parent of the child for at least six months

without expressing an intent to return and without providing adequate support for the child;

(5) the parent's parental rights with regard to another child have been involuntarily terminated based on a finding that the parent's conduct violated Section 161.001(1)(D) or (E) or a substantially equivalent provision of another state's law;

(6) the parent has been convicted for:

(A) the murder of another child of the parent and the offense would have been an offense under 18 U.S.C. Section 1111(a) if the offense had occurred in the special maritime or territorial jurisdiction of the United States;

(B) the voluntary manslaughter of another child of the parent and the offense would have been an offense under 18 U.S.C. Section 1112(a) if the offense had occurred in the special maritime or territorial jurisdiction of the United States;

(C) aiding or abetting, attempting, conspiring, or soliciting an offense under Subdivision (A) or (B); or

(D) the felony assault of the child or another child of the parent that resulted in serious bodily injury to the child or another child of the parent; or

(7) the parent's parental rights with regard to two other children have been involuntarily terminated.

In this case, there was evidence of a prior removal, but no evidence of a prior termination. There is no evidence of other aggravated circumstances as defined by section 262.2015 of the Family Code. At the hearing, the Department argued that no safety plan was necessary because of Pate's history with the child's previous removal. In its response filed in this court, the Department continues to rely on Pate's positive drug tests and her previous history with removal of the

8

child.  Although previous termination of another child is considered an aggravating circumstance, we find no authority holding that a previous temporary removal is sufficient to waive the requirement that the Department make reasonable attempts to enable the child to return home.  Therefore, although the Department was required to provide evidence that it had made reasonable efforts to enable the child to return home, it failed to do so.  *See Allen*, 359 S.W.3d at 290.

Pate has shown that the trial court could have come to only one reasonable conclusion—that the Department failed to satisfy the requirements of Section 262.201(b)(3) and that possession of the child should have been returned to his mother as required under Section 262.201.  Specifically, the Department presented no evidence that it had made reasonable efforts to enable the child to return home.

Accordingly, we conditionally grant relator's petition for writ of mandamus and direct the trial court to vacate the Temporary Order Following Adversary Hearing signed May 16, 2013, and order the return of the present possession of the child, J.L.C., to relator.  The writ will issue only if the trial court fails to comply with this opinion.


/s/     Jeffrey V. Brown
Justice


Panel consists of Justices Brown, Christopher, and McCally.

9