**IN RE M. N. M. and R. K., Relators**

NO. 14-17-00328-CV

Court of Appeals of Texas,
Houston (14th Dist.).

Opinion Filed June 29, 2017

Rehearing and Rehearing En Banc
Overruled July 3, 2017

Thomas C. Sanders, Steven Doyle Poock, Sugar Land, TX, for Relator.

Meredith A. Carr, Sandra D. Hachem, Gary M. Polland, Houston, TX, for Real Party in Interest.

Panel consists of Justices Boyce, Jamison, and Brown.

**OPINION**

William J. Boyce, Justice

The Department of Family and Protective Services removed a two-year-old child

from the possession of parents M.N.M. ("Mother") and R.K. ("Father") without a court order. *See generally* Tex. Fam. Code Ann. § 262.104 (Vernon 2014 & Supp. 2016). After removal, the trial court signed a Temporary Order Following Adversary Hearing; among other things, the trial court determined in this order that sufficient evidence supported findings precluding return of the removed child to her parents. *See id.* § 262.201(b) (Vernon Supp. 2016).

Mother and Father filed a petition for writ of mandamus challenging the Temporary Order Following Adversary Hearing. *See* Tex. Gov't Code Ann. § 22.221 (Vernon 2004); *see also* Tex. R. App. P. 52. They ask for a writ directing the trial court to (1) vacate the order, which appointed the Department to be temporary managing conservator of relators' child, and (2) return the child to relators.

We conditionally grant the petition for writ of mandamus because the hearing record lacks sufficient evidence to satisfy a person of ordinary prudence and caution that an urgent need for protection requiring the child's immediate removal existed at the time of removal. *See* Tex. Fam. Code § 262.201(b)(2).

## FACTUAL AND PROCEDURAL BACKGROUND

Mother was the child's primary caretaker. On March 1, 2017, the Department received a referral alleging that (1) Mother negligently supervised the child by leaving her unattended in a car for approximately 40 minutes while Mother received medical treatment at a hospital; and (2) Mother appeared to be unstable and under the influence of an unknown substance while at the hospital. According to testimony, the allegation concerning the child being left alone in a car was erroneous. The second allegation was not corroborated.

On March 9, 2017, the Department's caseworker met with Mother at her home and asked her to take a drug test. Mother voluntarily submitted to a drug test the next day. The Department received hair follicle test results on or about March 20, 2017; these results indicated Mother had tested positive for the presence of amphetamines and methamphetamines. The Department took possession of the child without a court order on Friday, March 24, 2017, and filed a petition seeking temporary managing conservatorship of the child on Monday, March 27, 2017. The trial court signed an Order for Protection of a Child in an Emergency and Notice of Hearing on March 27.

Under Family Code section 262.201, a full adversary hearing must be held not later than 14 days after removal unless the trial court grants an extension. The trial court signed an order on April 6, 2017, in which it set the adversary hearing for April 20, 2017.

Following a full adversary hearing, section 262.201 mandates return of a child who has been removed without a court order unless the trial court makes certain findings based upon evidence sufficient to satisfy a person of ordinary prudence and caution. Here, the trial court signed a temporary order on April 20 after the adversary hearing in which it appointed the Department as the child's temporary managing conservator. The April 20 temporary order includes findings invoking certain language from the statutory criteria for refusing to return a removed child to the parent:

- There was a danger to the child's physical health or safety caused by an act or failure to act of the person entitled to possession, and allowing the child to remain in the home is contrary to the child's welfare. *See*

Tex. Fam. Code Ann. § 262.201(b)(1).

- An urgent need for protection required the child's immediate removal and makes efforts to eliminate or prevent the child's removal impossible or unreasonable. *Cf. id.* § 262.201(b)(2) ("the urgent need for protection required the immediate removal of the child and reasonable efforts, consistent with the circumstances and providing for the safety of the child, were made to eliminate or prevent the child's removal ...").
- Notwithstanding reasonable efforts to eliminate the need for the child's removal and enable the child to return home, there is a substantial risk of a continuing danger if the child is returned home. *See id.* § 262.201(b)(3).
- There is a continuing danger to the child's physical health or safety, and allowing the child to remain in the home is contrary to the child's welfare. *Id.* § 262.201(c).
- The Department made reasonable efforts consistent with the child's health and safety to prevent or eliminate the need for the child's removal and make it possible for the child to return home, but continuation in the home would be contrary to the child's welfare. *Id.* §§ 262.201(b)(2), (3).
- Placing the child with the child's noncustodial parent or with a relative is inappropriate and is not in the child's best interest. *Id.* § 262.201(e).
- Appointing the parents as managing conservators is not in the child's best interest because the appointment would significantly impair the child's physical health and emotional development. *Id.* at § 153.131(a)–(b) (Vernon 2014).

An April 6, 2017 urinalysis test of Mother showed a positive result for methamphetamines, which indicated that Mother had used the drug within three days of the test. A post-removal drug test of Father showed a positive result for cocaine at a level that indicated more than a one-time use. On April 27, 2017, Mother and Father filed their petition for writ of mandamus with this court challenging the April 20 temporary order. The Department filed a response to the petition for writ of mandamus at this court's request.

The trial court held status hearings on May 17 and May 30, 2017. The trial court signed an order on May 17 in which it (1) placed the child with a relative of Mother, and (2) required this relative to supervise visitation between the child and her parents. The trial court signed an additional Status Hearing Order on May 30, 2017; among other things, this May 30 order directs the parents to "complete all services on the Family Plan of Service" and orders continued supervision of the parents' visits with the child. The May 30 order finds that "the goal of the service plans is to return the child to the parents, and the plans adequately ensure that reasonable efforts are being made to enable the parents to provide a safe environment for the child."

### MANDAMUS STANDARD

■ To obtain mandamus relief, a relator generally must show both that the trial court clearly abused its discretion and that the relator has no adequate remedy by appeal. *In re Prudential Ins. Co. of Am.,* 148 S.W.3d 124, 135–36 (Tex. 2004) (orig. proceeding). The April 20 temporary order is an order in a suit affecting the parent-child relationship that is not subject to an interlocutory appeal under the Texas Family Code. Tex. Fam. Code Ann. § 6.507 (Vernon 2006). Accordingly, relators have

no adequate remedy by appeal and satisfy the second requirement for mandamus relief. *See In re Tex. Dep't of Family & Protective Servs.*, 255 S.W.3d 613, 614 (Tex. 2008) (orig. proceeding); *In re Pate*, 407 S.W.3d 416, 418 (Tex. App.—Houston [14th Dist.] 2013, orig. proceeding).

## ANALYSIS

Family Code section 262.104 provides that if there is no time to obtain a temporary restraining order or attachment before taking possession of a child, consistent with the child's health and safety, then the Department may take possession of a child without a court order—but only on facts that would lead a person of ordinary prudence and caution to believe there is an immediate danger to the physical health or safety of the child. Tex. Fam. Code Ann. § 262.104.

This step is an "extreme measure" to be taken only when the statutorily required circumstances authorizing immediate removal are present. *In re Pate*, 407 S.W.3d at 419; *see also* Tex. Fam. Code Ann. § 262.201(b).

After an emergency removal under section 262.104, a court must hold an initial hearing on or before the first working day after the date the child is taken into possession. A full adversary hearing must be held within 14 days of the child's removal unless the deadline is extended. Tex. Fam. Code Ann. § 262.106 (Vernon Supp. 2016); *see also id. §* 262.201(a).

██ The adversary hearing is governed by section 262.201(b), which requires the court to return the child unless certain circumstances are present.

> At the conclusion of the full adversary hearing, the court shall order the return of the child to the parent, managing conservator, possessory conservator, guardian, caretaker, or custodian entitled to possession unless the court finds sufficient evidence to satisfy a person of ordinary prudence and caution that:
>
> (1) there was a danger to the physical health or safety of the child which was caused by an act or failure to act of the person entitled to possession and for the child to remain in the home is contrary to the welfare of the child;
>
> (2) the urgent need for protection required the immediate removal of the child and reasonable efforts, consistent with the circumstances and providing for the safety of the child, were made to eliminate or prevent the child's removal; and
>
> (3) reasonable efforts have been made to enable the child to return home, but there is a substantial risk of a continuing danger if the child is returned home.

If sufficient evidence does not demonstrate the existence of each requirement, then the court must return the child to the custody of her parents pending litigation. *Pate*, 407 S.W.3d at 419.

Relators argue, among other things, that the evidence is insufficient to support findings necessary to preclude the child's return to them because there is no evidence of danger to the child at the time the Department took possession. To analyze this contention, we examine the circumstances leading to removal on March 24 in more detail.

## I. Circumstances Leading to Removal

The caseworker signed an affidavit on March 27, 2017, in which she described the circumstances surrounding the child's removal. Those circumstances began with the initial referral:

> On 03/01/2017, the Texas Department of Family and Protective Services ... received a referral alleging Neglectful Supervision by [Mother]. The referral stated that [the child] was left by herself

approximately for 40 minutes while [Mother] was being medically treated. When [the child] was brought back in the department after being in the car, the child's arms and hands were hot to the touch. [Mother] appeared to be unstable, under the influence of an unknown substance, and acting erratically while in the emergency room.

The caseworker met with Father at his home on March 6, 2017, five days after the referral. Father reported that Mother was unavailable to be interviewed because she was sick. Father reported that he and Mother had been married for the past seven years, live in the same home, and he is the child's biological father. Father admitted occasional alcohol use, but denied drug use. Father stated that he would submit to a drug test if requested by the Department. He reported that Mother's adult daughter, the daughter's boyfriend, and Mother's mother went with Mother and the child to the hospital on March 1. The child was removed from the hospital room because she was disruptive. Father stated he was sure the child was not left alone, but Mother could provide specifics of the child's location at the hospital.

The caseworker also met with the child on March 6, 2017. The child was properly dressed and appropriately groomed. She appeared to be an appropriate height and weight for her age, and her behaviors and actions were typical of children in the same age group. The caseworker did not observe any injuries, marks or bruises on the child that would be consistent with abuse or neglect. Interaction between Father and the child was appropriate.

The caseworker met with Mother on March 9, 2017. The home appeared to be clean and no hazards were noted. Utilities were operational and there was plenty of food in the home.

During the March 9 meeting, the caseworker told Mother that the Department was called on March 1 because someone at the hospital overheard Mother report that she had a history of methamphetamine use. Mother reported that her drug test was negative and the child's meconium test came back negative. Mother reported prior alcohol abuse when she was younger and experimentation with marijuana. Mother reported she has not used drugs since she went to jail. The affidavit does not explain at this point when or why mother was incarcerated; a later portion of the affidavit describes a 120-day sentence for DUI in 2004. Mother agreed to submit to a drug test.

Mother reported during this meeting that she went to the hospital on March 1 for gallstone pain and the flu. Mother reported that her adult daughter removed the child from the hospital room because the child was "getting restless."

The caseworker interviewed Mother's adult daughter on March 9, 2017. The daughter reported that she went with Mother to the hospital on March 1. When the child became restless, the daughter took her out to the car where she and her boyfriend watched a movie with the child in the car. The daughter denied that the child had been left alone. The caseworker testified at the May 30 court hearing that, contrary to the initial referral, she later learned the child had not been left alone in a car on March 1.

Mother submitted to a hair follicle and a urinalysis test on March 10, 2017. The caseworker phoned Father on March 20, 2017, and advised him that Mother's hair follicle test was positive for amphetamine and methamphetamine; she said Father would need to be tested for drugs and the child would need to be placed outside the home.

The caseworker met with Mother on March 20, informed her that the hair follicle test was positive, and asked Mother for alternative placements for the child. Mother informed the caseworker that no alternative placements were available. Father was advised that the caseworker was coming to his home to administer a drug test to him. Father never arrived at the home despite being called several times.

The caseworker described her interaction with Mother on March 20:

From the time I walked in the door [Mother] was acting erratically. She was yelling and screaming and evading [sic] my personal space. [Mother] stated that I was nothing but a spirit from hell and that I was out to get her. The more upset she became the more I feared for my own safety. I also feared that [Mother] was attempting to flee with the child. She began to pack a backpack for [the child] and put her purse on her shoulder. She also began to look for her keys. I contacted Supervisor Diana Schultz, who contacted the Harris County Sheriff's Department on my behalf. When law enforcement arrived, I advised them of who I was and the nature of my visit. It had become clear that [Mother] at this time did not have a viable relative placement option and I was going to have to take [the child] with me. The officer's [sic] assisted me with getting [the child] away from [Mother], while they attempted to calm her down.

This interaction was not cited in the affidavit as a basis for immediate removal without a court order.

Following this interaction on March 20, Mother told the caseworker that the child could be placed with her cousins. On March 21, Father agreed to submit to a drug test and was provided a collection site address. On March 23, the cousins called the caseworker and asked to relinquish the child due to harassment from Mother and Grandmother.

On March 24, following investigations into other potential relative placements and caregivers, the caseworker "determined [Mother] ... had not [sic] viable placement options. [Mother] ... was given notice of the removal and [the child] ... was placed in foster care."

The affidavit also discusses Mother's history with the Department, which included a 2002 referral regarding her older daughter. A report of that referral stated Mother became upset when her ex-husband did not want to watch a video of their daughter's birthday party. Mother grabbed her daughter by the arm and a popping sound was heard. This incident resulted in an arrest for domestic violence. The case was closed after services were completed. A referral of neglectful supervision was also sent to the Department when the child was born in 2014. Mother tested positive for amphetamine and methamphetamine while pregnant. But drug tests were negative at birth, and the case was closed. This history was not cited in the affidavit as a basis for immediate removal without a court order.

In the March 27 affidavit's section entitled "Conclusion and Requested Relief," the caseworker stated the following reasons for removing the child immediately on March 24 without a court order:

Due to [Mother's] positive hair follicle for amphetamines and methamphetamines during the investigation, [Father's] failure to submit to a drug test, and the lack of viable relative placements, it is the opinion of the Texas Department of Family and Protective Services that there is a continuing danger to the physical health and safety of [the child] if she remains in the care of [Mother]. Continuation in the home would be contrary to the child's welfare.

This portion of the affidavit concludes: "Reasonable efforts, consistent with the circumstances and providing for the safety of the child, were made to prevent or eliminate the need for removal of the child."

## II. These Circumstances Do Not Establish an Urgent Need for Protection that Required Immediate Removal under Section 262.201(b)(2)

■ The Department argues that the statutory prerequisites for immediate removal without a court order were satisfied because the child was two years old and the evidence showed illegal drug use by both parents. The Department relies on *In re S.R.G.*, No. 14-16-00900-CV, 2017 WL 1497350, at *5 (Tex. App.—Houston [14th Dist.] April 25, 2017, no pet. h.) (mem. op.), and *In re J.J.G.*, No. 14-15-00094-CV, 2015 WL 3524371, at *5 (Tex. App.—Houston [14th Dist.] June 4, 2015, no pet.) (mem. op.), for the proposition that drug use can result in parents becoming impaired or imprisoned and thus incapable of properly parenting a young child dependent on their care.

*In re S.R.G.* and *In re J.J.G.* did not address sufficiency of the evidence to permit immediate removal of a child without a court order under section 262.104, or to authorize a subsequent refusal to return the child under section 262.201 following removal. Instead, these decisions addressed the sufficiency of the evidence to support a judgment terminating a parent-child relationship under section 161.001(b)(1)(E); this provision allows a court to terminate the parent-child relationship if it finds by clear and convincing evidence that the parent has engaged in conduct which endangers the child's physical or emotional well-being. Tex. Fam. Code § 161.001(b)(1)(E) (Vernon Supp. 2016).

■ To be sure, there is potential for overlap in addressing drug use by parents based on a standard framed as (1) "conduct which endangers the physical or emotional well-being of the child" for termination purposes under section 161.001(b)(E); and (2) "danger to the physical health or safety of the child" for purposes of immediate removal without a court order under sections 262.104(b)(1) and 262.201(b)(1). But we are mindful that procedures addressing immediate removal of a child without a court order involve distinct circumstances and additional considerations. "Removing a child from [her] home and parents on an emergency basis before fully litigating the issue of whether the parents should continue to have custody of the child is an extreme measure that may be taken only when the circumstances indicate a danger to the physical health and welfare of the child and the need for [her] protection is so urgent that immediate removal from the home is necessary." *In re Pate*, 407 S.W.3d at 419.

Taking as a given for these purposes that this evidence could satisfy section 262.201(b)(1)'s "danger to the physical health and safety of the child" standard, we nonetheless conclude that the evidence falls short with respect to section 262.201(b)(2). This provision mandates the child's return unless the evidence adduced at a full adversary hearing suffices to satisfy a person of ordinary prudence and caution that "the urgent need for protection required the immediate removal of the child and reasonable efforts, consistent with circumstances and providing for the safety of the child, were made to eliminate or prevent the child's removal...." Tex. Fam. Code Ann. § 262.201(2)(b).

According to the caseworker's affidavit, the Department undertook the extreme measure of immediate removal without a court order on March 24 based on Moth-

er's hair follicle test, which had come back positive four days earlier; Father's failure to test, which according to the Department points to drug use; and "the lack of viable relative placements" following an unsuccessful initial placement with relatives on March 20. The caseworker's affidavit did not rely upon Mother's hostile reaction to the March 20 visit as a basis for immediate removal without a court order. The allegation that Mother left the child unattended in a car was unfounded.

During her March 6 visit with the child, the caseworker observed that she was properly dressed and appropriately groomed, appeared to be an appropriate height and weight for a two-year-old, interacted appropriately with Father, and behaved in a typical fashion for a two-year-old. The caseworker did not observe injuries, marks or bruises on the child that would indicate abuse or neglect. During her March 9 visit with Mother, the caseworker observed that the home appeared to be clean, no hazards were identified, utilities were operational, and there was plenty of food in the home.

During direct examination at the April 20 hearing, the caseworker testified:

Q. [D]id mother eventually take a drug test?

A. She did.

Q. And you received the results of that drug test, correct?

A. Correct.

Q. And tell me what actions the Agency took when they found out the results of the drug test.

A. When the drug test results were returned, I called the home prior to let them know the drug tests were positive and that we needed to explore placements for [the child].

. . .

I then went to the home. [Mother] . . . became hostile and I had to call the Sheriff's Department. She also, at the beginning, was not able to provide placement; and then later on, she came up with a relative for parental child safety placement.

Q. What happened when the child safety placement broke down?

. . .

A. Once the placement started breaking down, [Mother] was contacted about other possible relative placements. [Mother's adult daughter] also contacted me. . . . We did our preliminary home study on [Mother's adult daughter], but she admitted to previous marijuana use, so she was not viable. And at the time [Mother] did not have anyone else that was able to take [the child] that day.

Q. Was it determined by the Agency that there was an immediate danger to [the child] . . . at this time and [the child] . . . needed to be taken into the custody of the Department?

. . .

A. Yes.

The caseworker testified as follows during cross-examination on April 20.

Q. Child was not in danger at the time of removal, correct?

A. No, she was.

Q. Was she about to be injured?

A. No.

Q. Was she about to be hit?

A. No.

Q. Was she about to fall?

A. No.

Q. Was she about to get shot?

A. No.

. . .

Q. Was she about to be physically abused?

A. No.

. . .

Q. The reason for the removal was that Mom failed a drug test and you didn't have anywhere else to place her, correct?

A. . . . for the original parental child safety placement, yes.

Q. Yes. That was the only reason listed, correct?

A. Yes.

Q. Okay. And the drug test you refer to was a hair follicle test, correct?

A. Yes.

Q. And do you understand that a hair follicle test can be positive for meth months after use?

A. Yes.

Q. And she was also negative for a urine analysis, correct?

A. That's correct.

Relators point to this testimony and argue that mandamus is warranted based on a failure to satisfy section 262.201(b)(2) because "the Department admitted there was no physical or sexual danger to the child on the date of removal or the dates leading up to removal."

The Department's response is twofold.

First, the Department focuses on section 262.201(b)(1)'s reference to "danger to the physical health or safety of the child." Quoting *In re E.C.R.*, 402 S.W.3d 239, 247 (Tex. 2013), the Department contends that the phrase "danger to the physical health or safety of the child" is " 'centered on risk, rather than just a history of actual abuse or neglect.' " According to the Department, this phrase "does not require proof the child is in immediate danger of physical or sexual abuse." Again citing *In re E.C.R.*, 402 S.W.3d at 248, the Department contends that Chapter 262's removal standard encompasses risks or threats in the child's environment.

Second, the Department conflates subsections (b)(1) and (b)(2) of section 262.201. The Department contends it has established "there was danger in the child's home with the confirmation of meth use by mother after receiving a referral expressing concern that the child was left alone in a car for 40 minutes and the mother appeared under the influence." It also contends "that same evidence supported a finding by an ordinary person of prudence and caution that there was an urgent need for protection requiring the child's immediate removal." According to the Department, "[t]he fact that the caseworker could not say the child was about to be shot or physically or sexually abused is not an admission that the child was not in danger."

A conclusion that "danger to the physical health and safety of the child" encompasses risks in the child's environment makes sense as far as it goes. But this conclusion does not go so far as to resolve the appellate challenge presented here. The parties' briefing presents this court with a binary choice between a section 262.201(b)(2) standard that requires either

- serious bodily injury to be moments away; or, alternatively,
- any indeterminate degree of risk arising from a failure to take a drug test, or a positive—but not time-specific—drug test result.

We reject both choices proffered by the parties.

Instead, we follow chapter 262's plain language by focusing on the ***urgency*** of the need for protection and the ***immediacy*** of the risk identified to justify removal undertaken without court order to protect a child in derogation of a parent's constitutional right. *See In re J.W.T.*, 872 S.W.2d 189, 194-95 (Tex. 1994) ("In *Wiley v. Spratlan*, 543 S.W.2d 349, 352 (Tex. 1976), we recognized that '[t]he natural right

which exists between parents and their children is one of constitutional dimensions.' ... We have nonetheless tempered these decisions by recognizing that the rights of natural parents are not absolute; protection of the child is paramount." (citations omitted)).

In contrast to section 262.201(b)(1), which focuses on the "danger to the physical health or safety of the child," including risk, section 262.201(b)(2) addresses an additional timing element and demands more—namely, evidence of an "urgent need for protection" that "required the immediate removal of the child."

Section 262.201(b)(2)'s timing emphasis dovetails with section 262.104(a), which establishes procedures applicable "[i]f there is no time to obtain a temporary order, temporary restraining order, or attachment ... before taking possession of a child consistent with the health and safety of that child...." In those circumstances, a law enforcement officer, juvenile probation officer, or authorized Department representative can take possession of a child in an emergency without a court order under subsection (a)(1) only if there is "an *immediate* danger to the physical health or safety of the child." Tex. Fam. Code Ann. § 262.104(a)(1) (emphasis added). Similarly, corroborated evidence indicating current controlled substance use by a parent is not, by itself, sufficient to allow emergency removal without a court order under section 262.104(a)(5). To the contrary, the corroborated evidence also must demonstrate that "the use constitutes an *immediate* danger to the physical health or safety of the child." *Id.* § 262.104(a)(5) (emphasis added).

When the Department argues that this emergency removal satisfies section 262.201(b)(2) because an indeterminate risk alone is enough to satisfy subsection (b)(1), the Department overlooks subsec-

tion (b)(2)'s additional focus on urgency and immediacy of the risk. Mother's March 20 hair follicle test result was not specific as to time and potentially encompassed a period months earlier. Her pre-removal urinalysis test results were negative. The caseworker's personal visits with Mother, Father, and the child before removal allowed her to observe an injury-free two-year-old who was appropriately dressed, groomed, fed, housed, and behaved; appropriate interactions between the child and Father; a clean and hazard-free house; and a kitchen stocked with food.

The Department could not ignore a pre-removal hair follicle test that came back positive or the results of post-removal drug tests; the Family Code provides a range of mechanisms to address controlled substance use by parents. *See In re Tex. Dep't of Family & Protective Servs.*, 255 S.W.3d at 615 ("[T]he Family Code gives the district court broad authority to protect children short of separating them from their parents and placing them in foster care.") (citing Tex. Fam. Code Ann. §§ 105.001(a) (Vernon 2014), 262.205 (Vernon 2014)). The Department and the trial court retain authority to address subsequent conduct by Mother and Father as appropriate. *See id.; see also In re P.D.*, No. 06-14-00052-CV, 2014 WL 5465872, at *3 (Tex. App.—Texarkana Oct. 29, 2014, no pet.) (mem. op.) (the mother, who had a history of alcohol and methamphetamine abuse, was provided counseling and a safety plan before the child was removed for non-compliance with the safety plan); *cf. In re J.N.A.*, No. 04-14-00825-CV, 2015 WL 1393272, at *1 (Tex. App.—San Antonio Mar. 25, 2015, no pet.) (mem. op.) (where mother had a drug abuse problem, the Department provided a family service plan that required regular drug testing, attendance at Narcotics Anonymous meetings, and counseling); *In re T.C.H.*, No. 06-16-

00054-CV, 2016 WL 7175291, at *3 (Tex. App.—Texarkana Dec. 8, 2016, no pet.) (mem. op.) (where mother had a problem with alcohol and drug abuse, the court issued a temporary order requiring the mother to attend and fully cooperate in counseling, to attend and successfully complete parenting classes, and to submit to court-ordered drug and alcohol assessments).

Looking specifically at the April 20 order that is the subject of this mandamus, we conclude that this record does not support resort in the first instance to emergency removal without a court order—an "extreme measure" designed for emergency situations—or the subsequent refusal to return the child following emergency removal without a court order. *Cf. In re Pate*, 407 S.W.3d at 420 (granting mandamus, directing trial court to vacate Temporary Order Following Adversary Hearing, and ordering return of child to parent under section 262.201(a) notwithstanding the Department's reliance on Pate's positive drug tests for amphetamine and methamphetamine, and "her previous history with removal of the child" to justify emergency removal without a court order). Even assuming that post-removal drug test results are germane to assessing whether there is "a substantial risk of a continuing danger if the child is returned home" under section 262.201(b)(3), a child removed without a court order under section 262.104 must be returned to the parent unless all requirements of section 262.201 are satisfied. *See id.* On this record, section 262.201(b)(2) was not satisfied. *See In re Allen*, 359 S.W.3d 284, 290 (Tex. App.—Texarkana 2012, orig. proceeding) (granting mandamus relief because there was "no proof that 'the urgent need for protection required the immediate removal'" of five-month-old baby from possession of mother who failed to take medication for bipolar disorder, was prone to anger management issues, lacked parenting skills, and had an unstable living environment).

### Conclusion

We conditionally grant relators' petition for writ of mandamus and direct the trial court to vacate the Temporary Order Following Adversary Hearing signed April 20, 2017, and order the return of the present possession of the child to relators. The writ will issue only if the trial court fails to comply with this opinion.

Relators' second amended motion for temporary relief is denied as moot.