**Petitions for Writ of Mandamus Conditionally Granted and Memorandum Opinion filed March 9, 2021.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-20-00703-CV

---

## IN RE T.M., Relator

---

## NO. 14-20-00706-CV

---

## IN RE M.D.M., Relator

---

**ORIGINAL PROCEEDING**
**WRIT OF MANDAMUS**
**328th District Court**
**Fort Bend County, Texas**
**Trial Court Cause No. 20-DCV-273857**

---

## MEMORANDUM OPINION

On October 16, 2020 and October 19, 2020, relators T.M. ("Mother") and M.D.M. ("Father"), respectively, filed a petition for writ of mandamus in this court. *See* Tex. Gov't Code Ann. § 22.221; *see also* Tex. R. App. P. 52. In the petitions,

Mother and Father ask this court to compel the Honorable John Millard, associate judge of the 328th District Court of Fort Bend County, to vacate his July 30, 2021 temporary order following adversary hearing and order the child returned to them. We conditionally grant the petitions.

## BACKGROUND

Mother and Father are married and the parents of the child, who was born in March 2020. Father, who is a firefighter, was on leave from the child's birth until April 17, 2020. Mother, who is a nurse, was on leave until she returned to work on May 1, 2020. During the time Mother and Father were on leave, they were the primary caregivers for the child. Maternal Grandparents and Paternal Grandparents also cared for the child.

On March 16, 2020, the child saw the pediatrician, Dr. Pamela Sanders, who had no concerns about the child's appetite or weight at that time. Mother became concerned about the child's appetite and reflux and she was not sure if the child was gaining enough weight and scheduled a video appointment with Dr. Sanders for April 22, 2020. Dr. Sanders addressed the issues Mother raised during that visit.

Mother was again concerned about the child's appetite and reflux and scheduled another video appointment with Dr. Sanders for April 29, 2020. The child's next visit with Dr. Sanders was on May 6, 2020, for a checkup and vaccinations. The child had a bruise on her cheek. Dr. Sanders asked Mother what caused that bruise. Mother thought that Father might have used his fingers on the child's cheeks to push her lips open when he was feeding the child with a bottle. Mother could think of no other explanation.

2

On May 18, 2020, Mother and Father noticed that the child's appetite was poor and messaged Dr. Sanders, who said to make an appointment. They made an appointment for May 20, 2020. On the evening on May 19, 2020, Maternal Grandmother noticed that the child's belly was distended and pointed it out to Mother. Father took the child to the May 20, 2020 appointment with Dr. Sanders because Mother was working. Dr. Sanders told Father to take the child to the hospital.

Father took the child to Texas Children's Hospital in Katy. The child presented to the hospital for abdominal distension, failure to thrive, and vomiting. The hospital did an ultrasound and found fluid in the child's belly. The hospital then performed a "small bowel follow-through study" to learn the source of the fluid. During that procedure, the hospital discovered that the child had fractured ribs.

On May 22, 2020, the child was transferred from Texas Children's Hospital in Katy to Texas Children's Hospital in the Texas Medical Center to be seen by a trauma team. That same day, the Texas Department of Family and Protective Services (the "Department') received a report alleging the physical abuse of the child by Mother and Father. Detective Stephanie Rutland and the Department's investigator, Tamera Kiser, and its special investigator, Deborah Sublett, met with Father at the hospital. Father could not explain how the child had received her injuries, and he did not know who had injured the child. Rutland and Sublett informed Father that they believed he had intentionally caused the child's injuries.

On May 23, 2020, Kiser, Sublett, and Rutland met with Mother, who signed a safety plan after speaking to her attorney. The safety plan provided in part:

3

> The agency is concerned that [Father] and [Mother] has [sic] physically abused their baby . . . and has [sic] no explanation on how the injuries occurred.

*    *    *

> [Father] and [Mother] cannot be alone with their baby . . . . They must be supervised at all time when caring for their baby.  The parents have been notified that they cannot be alone with their child.

Kiser also presented the safety plan to Father, who also signed it after speaking to his attorney.

While the child was in the intensive care unit, Kiser did not believe a safety plan was necessary because the hospital was monitoring the child 24 hours a day. However, Kiser felt that the safety plan became necessary when the child was moved to a regular room because she would no longer be monitored.  The Department was not able to provide someone to monitor Mother and Father because only one person was allowed in the hospital room at the time pursuant to hospital policy due to the COVID-19 pandemic.

On June 4, 2020, the Department filed an original petition for protection of a child, for conservatorship, and for termination in a suit affecting the parent-child relationship.  The Department asked the trial court (1) for permission to take custody of the child in an emergency; (2) to be appointed temporary sole managing conservator of the child; and (3) for temporary orders.  Furthermore, if the child could not be safely reunified with the parents, the Department stated that it would seek termination of Mother's and Father's parental rights.  The trial court signed temporary orders appointing the Department temporary sole managing conservator

of the child and ordering that the child be placed with Paternal Grandfather and Paternal Step-grandmother.

The trial court held the statutory adversary hearing on June 30 to July 2, 2020. At the hearing, Mother testified that the child had a complicated birth. Mother explained that the child was stuck in the birth canal for four hours, which "could have caused something to affect her," but she did not bring this up with the pediatrician. Mother also testified that she does not believe that the child had rib fractures but more testing such as imaging and blood work needed to be done. Nor does Mother know how the kidney injury occurred. Mother could not provide any explanation regarding how the injuries could have occurred but believes that the injuries might have been caused by accident or a medical condition.

Father testified that he does not know if the ribs were fractured, but he also explained that they were trying to determine from other doctors what caused the child's rib fractures. Father expressed concerned about the fractured ribs because the child may have "medical problems that we don't know about." Father did not believe that the child had suffered any abdominal injuries prior to May 20, 2020. Father understands that the Department is accusing him of having intentionally injured the child by squeezing her.

Dr. Angela Bachim, the child abuse pediatrician at Baylor College of Medicine at Texas Children's Hospital, stated that the child's injuries were concerning in an infant who cannot move herself enough to cause an injury. Dr. Bachim explained that a child's rib fractures could have been caused by "violently squeezing" the child or "compressing her chest." Dr. Bachim testified that the only way the child could have received the injury to her uteropelvic junction was from

"blunt force trauma to the abdomen," "blunt force trauma from the back," or "some sort of acceleration-deceleration injuries to the kidney area" and she was unaware of anything that would support a claim that the injury was accidental.

Paternal Grandfather took the child to Dr. Gary Brock, a specialist in pediatric orthopedic surgery, for a second opinion. Dr. Brock testified that the difficult birth "would be at the top of my differential diagnosis" as a cause for the child's rib fractures rather than "some blunt force trauma." Dr. Bachim, on the other hand, opined that the child's rib fractures could not have been due to the child being the birth canal for an extended period of time because of the healing stages of the fractures. Dr. Brock further observed that there was "no appropriate work-up to make an assessment of metabolic bone disease," which can cause rib and other fractures.

At the end of the hearing, the trial court announced that it had found sufficient evidence to support the appointment of the Department temporary managing conservatorship of the child. The trial court also approved the placement of the child with Paternal Grandfather and Paternal Step-grandmother. The trial court signed the written temporary order on July 30, 2020, consistent with its July 2, 2020 oral ruling.

## STANDARD OF REVIEW

Generally, to be entitled to mandamus relief, a relator must demonstrate (1) the trial court clearly abused its discretion; and (2) the relator has no adequate remedy by appeal. *In re Nat'l Lloyds Ins. Co.*, 507 S.W.3d 219, 226 (Tex. 2106) (orig. proceeding) (per curiam). A trial court clearly abuses its discretion if it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error

6

of law, or if it clearly fails to analyze the law correctly or apply the law correctly to the facts. *In re H.E.B. Grocery Co., L.P.*, 492 S.W.3d 300, 302 (Tex. 2016) (orig. proceeding) (per curiam); *In re Cerberus Capital Mgmt., L.P.*, 164 S.W.3d 379, 382 (Tex. 2005) (orig. proceeding) (per curiam). Temporary orders are not subject to interlocutory appeal. Tex. Fam. Code Ann. § 6.507. Therefore, mandamus is the appropriate remedy in this case. *See Dancy v. Daggett*, 815 S.W.2d 548, 549 (Tex. 1991) (orig. proceeding) (per curaim).

## ANALYSIS

Chapter 262 of the family code sets forth the procedures and substantive requirements by which the Department may take possession of a child when necessary to protect that child's health and safety. The Department is granted authority in urgent circumstances to remove a child from his or her home without prior notice. *See* Tex. Fam. Code Ann. § 262.101. A full adversary hearing must be "held not later than the 14th day after the date the child was taken into possession" by the Department. *Id.* § 262.201(a). At the conclusion of the adversary hearing, the trial court must return the child to the parents, conservators, guardians, caretakers or custodians entitled to possession unless the trial court finds sufficient evidence to satisfy a person of ordinary prudence and caution that:

> (1) there was a danger to the physical health or safety of the child, including a danger that the child would be a victim of trafficking under Section 20A.02 or 20A.03, Penal Code, which was caused by an act or failure to act of the person entitled to possession and for the child to remain in the home is contrary to the welfare of the child;
>
> (2) the urgent need for protection required the immediate removal of the child and reasonable efforts, consistent with the circumstances and

7

providing for the safety of the child, were made to eliminate or prevent the child's removal; and

(3) reasonable efforts have been made to enable the child to return home, but there is a substantial risk of a continuing danger if the child is returned home.

*Id.* § 262.201(g). Unless the evidence reflects the existence of each requirement set forth in section 262.201(g), the trial court is required to return the child to the parent's custody pending litigation. *In re K.L.M.*, No. 14-19-00713-CV, 2019 WL 6001170, at *4 (Tex. App.—Houston [14th Dist.] Nov. 14, 2019, orig. proceeding) (mem. op.).

The trial court found that there was sufficient evidence to support each of the elements of section 262.201(g). Mother and Father maintain that the evidence does not support the trial court's findings under section 262.201(g) and the trial court was required to return the child to them.

After reviewing the record of the adversary hearing, we conclude that the evidence does not support the trial court's finding that "reasonable efforts have been made to enable [the child] to return" to Mother and Father's home under section 262.201(g)(3).

Kiser testified with regard to returning the child to her home:

Q. And since that time when you removed [the child] prior to us starting this hearing on the 29th, in that 25-day window, what efforts did you make to return [the child] to her home?

A. None.

8

Father confirmed at the adversary hearing that the Department (1) did not make any suggestions or recommendations for the child to return home safely; (2) did not offer any services to allow the child to return home; and (3) had not contacted him about what it would do to try to return the child. Mother similarly testified that the Department made no effort to return the child to her home.

Kiser believed that the child will always be in danger with Mother and Father as long as they are unable to provide an explanation for the child's injuries but "[i]f they can tell me what happened, then yes, that can change my mind." Consistent with Kiser's testimony, the Department argues that efforts by it to enable the child's return were unsuccessful because the child had suffered injuries while in the care of Mother and Father, who did not acknowledge that the child was injured.

There is nothing in the record to show that the Department made any reasonable efforts to enable the child to return to her home. The Department failed to take any steps such as implementing a family service plan, which is considered a reasonable effort to enable a child to return home. *See In re R.P.D.*, No. 05-09-00258-CV, 2019 WL 1578274, at *2 (Tex. App.—Dallas Apr. 12, 2019, orig. proceeding) (mem. op.); *In re N.R.T.*, 338 S.W.3d 667, 674 (Tex. App.—Amarillo 2011, no pet.); *In re J.J.S.*, 272 S.W.3d 74, 83–84 (Tex. App.—Waco 2008, pet. struck); *In re S.S.*, No. 11-05-00083-CV, 2006 WL 1285125, at *3 (Tex. App.—Eastland May 11, 2006, no pet.) (mem. op.). Moreover, although Rutland and Sublett believed that Father intentionally injured the child, the Department did not ask Father to move out of the child's home so that she could return home.

Subsection (3) affords the trial court discretion to determine what efforts are "reasonable" to enable the child to return home. *In re Pate*, 407 S.W.3d 416, 419

9

(Tex. App.—Houston [14th Dist.] 2013, orig. proceeding). However, in this case, there is no evidence that the Department made any effort to enable the chile to return home. In the absence of such evidence, the Department did not meet its burden under section 262.201(g) and the trial court was required to return the child to Mother and Father. *See* Tex. Fam. Code Ann. § 262.201. Therefore, we hold that the trial court abused its discretion by not ordering the child returned to Mother and Father. *See Pate*, 407 S.W.3d at 420 (conditionally granting petition because department failed to provide evidence that it had made reasonable efforts to enable child to return home).

Accordingly, we conditionally grant relators' petitions for writ of mandamus and direct the trial court to vacate its July 30, 2020 temporary order following adversary hearing and order the return of the child to Mother and Father. The writ will issue only if the trial court fails to comply with this opinion. The motion for expedited consideration is dismissed as moot.

PER CURIAM

Panel consists of Justices Wise, Bourliot, and Wilson.